GREEN *v.* WAYNE SOAP COMPANY

OPINION OF THE COURT

1. DISMISSAL AND NONSUIT—DETROIT COMMON PLEAS COURT—NO
   PROGRESS DISMISSAL—RES JUDICATA.

   A dismissal for lack of progress in the Common Pleas Court
   of Detroit bars an adjudication of the same cause of action
   in circuit court where no motion to reinstate the action has
   been timely made as required by the Rules of the Common
   Pleas Court; the lack of progress dismissal, under such cir-
   cumstances, is *res judicata* of the cause of action (Detroit Com-
   mon Pleas Court Rule 16.4, 27.3, 39; GCR 1963, 504.1[1], 504.1
   [2], 504.2).

2. DISMISSAL AND NONSUIT—DETROIT COMMON PLEAS COURT—NO
   PROGRESS DISMISSAL—EFFECT.

   Accelerated judgment is proper where the same cause of action
   was dismissed in the Detroit Common Pleas Court for lack
   of progress and no motion to reinstate, as provided for by
   the Common Pleas Rules, had been timely made (Detroit Com-
   mon Pleas Court Rule 16.4, 27.3, 39; GCR 1963, 504.1[1], 504.1
   [2], 504.2).

DISSENT BY LEVIN, J.

3. DISMISSAL AND NONSUIT—NO PROGRESS DISMISSALS—"GENERAL
   HOUSECLEANING" DISMISSALS—EFFECT—RES JUDICATA.

   *General housecleaning no progress dismissals do not operate as
   an adjudication upon the merits; the doctrine of* res judicata

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit
   §§ 72–78.
[2] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 72.
   41 Am Jur, Pleading §§ 335–339.
[5] 46 Am Jur 2d, Judgments §§ 73, 76.
[6] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 69–
   71.
[7] 46 Am Jur 2d, Judgments §§ 72–76.
[8] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 53,
   55, 59, 61.

*does not block reinstitution of an action dismissed for no progress.*

4. DISMISSAL AND NONSUIT—DETROIT COMMON PLEAS COURT—No PROGRESS DISMISSAL—EFFECT.

*A no-progress dismissal in the Common Pleas Court of Detroit does not bar recommencement of the action (Detroit Common Pleas Court Rule 16, 27.3, 39; GCR 1963, 504.2).*

5. JUDGMENT — ORDERS — MEANING — PAROL EVIDENCE — ESTABLISHED PRACTICE.

*The meaning of a court order, if unclear, can be established by parol evidence, including evidence of the long-established practice of the court.*

6. DISMISSAL AND NONSUIT—DETROIT COMMON PLEAS COURT—No PROGRESS DISMISSAL—MEANING—PRACTICE OF COURT.

*The word "dismissed" when added to the docket in the Common Pleas Court of Detroit with a rubber stamp, following the publication of the name of a case in a list of no progress cases, means according to the long-established practice of the Common Pleas Court, that the case is dismissed without prejudice (Detroit Common Pleas Court Rule 27.3).*

7. JUDGMENT—INTERPRETATION—ISSUING COURT'S INTERPRETATION.

*A court's interpretation of its own judgment is entitled to great weight.*

8. DISMISSAL AND NONSUIT—DISMISSAL WITH PREJUDICE—COURT'S DUTY.

*Dismissal of an action with prejudice is a drastic remedy, the trial court must carefully exercise its discretion before entering an order which operates as an adjudication on the merits.*

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 December 7, 1970, at Detroit. (Docket No. 8295.) Decided April 23, 1971. Leave to appeal granted, decision of the Court of Appeals reversed, decision of trial court affirmed, and remanded for trial, 385 Mich 785.

Complaint by Philip Green and Elizabeth Green against the Wayne Soap Company and the Joseph Putz Company, Inc., for negligently causing an ex-

plosion. Case dismissed in Common Pleas Court for the City of Detroit for lack of progress. Complaint refiled in Wayne County Circuit Court. Defendants' motion for accelerated judgment denied. Defendants appeal by leave granted. Reversed.

*Stuart E. Small, P. C. (Caleb M. Simon,* of counsel), for plaintiffs.

*Kelly & Tatham (Donald J. Morbach,* of counsel), for defendant Wayne Soap Company.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr,* for defendant Joseph Putz Company, Inc.

Before: LESINSKI, C. J., and LEVIN and O'HARA,[*] JJ.

O'HARA, J. Before they commenced this action in the circuit court, the plaintiffs, Philip and Elizabeth Green, had commenced in the Common Pleas Court for the City of Detroit another action against the defendants, Wayne Soap Company and Joseph Putz Company, Inc. Both actions are based on the same claims of the plaintiffs against the defendants. The action first commenced, the common pleas action, was dismissed on October 14, 1968, for lack of progress pursuant to Common Pleas Court Rule 27.3.[1] A motion to reinstate was not filed within the six-

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] CommonPleas Court Rule 27.3:

"The Clerk of the Court shall on each secular day of each month prepare a list of cases by number, in which no progress has been made for six months. Said list of cases shall be published in the Detroit Legal News at least one full day preceding calling of said cases before the Presiding Judge. Notice of the call date shall be published as directed by the Presiding Judge. The Presiding Judge may make such disposition of each case as he deems just and proper."

month period prescribed in Common Pleas Court Rule 16.4. Thereafter, on April 25, 1969, this action was commenced in the circuit court.

The defendants appeal, on leave granted, from a denial of their motions in the circuit court action for accelerated judgment. They contend that the no progress dismissal of the common pleas action operated as an adjudication on the merits and, therefore, the circuit court action is barred by the doctrine of *res judicata.*

We find something inherently objectionable in plaintiffs being able to institute actions in one court, purposefully or carelessly allowing them to be dismissed for lack of progress, and then, with no requirements other than increasing the *ad damnum* clause and paying an additional filing fee, reinstitute the same cause of action in another court.

By so doing they subject defendants, against whom plaintiffs bear the burden of proof, to the requirement of retaining counsel twice, and answering twice, thus assuming a double expense at a stage where no liability against defendants has been established.

Surely defendants may properly lament with Hamlet that the "law's delay" is one of "the heartaches and thousand natural shocks that flesh is heir to".

At the glacial docket pace of overburdened trial courts, defendants, under the rule interpretation of my esteemed colleague, may be in litigation *ad infinitum ad nauseam* without ever an adjudication of their claimed fault.

Where does fairness reside? Plaintiffs here had ample opportunity to have their "day in court" in the forum they originally chose. By what reasoning may they eschew it and claim an additional one in another?

Common Pleas Court Rule 27.3, the no-progress rule, must be read in conjunction with Common Pleas Court Rule 39 which provides that *"in all matters not herein provided for,* or not expressly prohibited or specified by statute, *the Michigan Court Rule shall govern."* (Emphasis supplied.)

Common Pleas Court Rule 27.3 does not expressly provide for the ultimate effect of its provisions. Consequently, Common Pleas Court Rule 39 makes the provisions of the General Court Rules pertaining to the effect of an involuntary dismissal, applicable. GCR 1963, 504.2 provides as follows:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision *and any dismissal not provided for in this rule,* other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." (Emphasis supplied.)

In view of the fact that GCR 1963, 504.1(1) and (2) expressly provide for voluntary nonsuits at plaintiff's instance, a dismissal for lack of progress (see GCR 1963, 501.3), must be viewed as an involuntary dismissal made pursuant to GCR 1963, 504.2.

A litigant, aggrieved by a so-called "general housecleaning no-progress dismissal", is not without remedy. He is entitled to move for reinstatement or for voluntary nonsuit, if his motion is timely made.

It may be true that creating a bar as a result of an order of a court, based on the passage of time and publication, is harsh, but it does not constitute a denial of due process. It may be that it would be more desirable or equitable to require a litigant who seeks to have a dismissal for no progress constitute a bar to serve a timely written notice of the

dismissal on the other party; however, the power to determine this is the prerogative of the Supreme Court under its rule-making powers and not ours by interpretation.

We are constrained to hold that the dismissal here operated to establish the defense of *res judicata.* The motion for accelerated judgment should have been granted.

Reversed. Costs to defendants.

LESINSKI, C. J., concurred.

LEVIN, J., (*dissenting*). I dissent because (1) it is my understanding of both the practice and of the sense of the court rules that, as held in *Caughey* v. *Rozycki* (1970), 22 Mich App 317, 321, general house-cleaning no progress dismissals do not operate as an adjudication upon the merits and, accordingly, the doctrine of *res judicata* does not block reinstitution of an action dismissed for "no progress"; and (2) the judges of the Common Pleas Court have indicated that *their* understanding of *their* no-progress orders of dismissal is that they are without prejudice to reinstitution of the action.

At issue is only the question whether a no-progress dismissal following the appearance by publication of an action on a no-progress calendar operates as an adjudication on the merits. There is not before us the separate question of whether a dismissal for *lack of prosecution* following individualized consideration (upon a defendant's motion or the court's own motion for dismissal) should be with prejudice and, therefore, operate as an adjudication on the merits.[1]

---

[1] Defendant's reliance on *Rose* v. *Rose* (1968), 10 Mich App 233, is misplaced. As indicated in *Caughey* v. *Rozycki* (1970), 22 Mich App 317, 322, fn 5, the complaint in the *Rose* case was not dismissed

I

In *Caughey* v. *Rozycki* we considered and rejected Rozycki's contention that because a no-progress order dismissing Caughey's action did not specify that the dismissal would be without prejudice, the dismissal, by reason of GCR 1963, 504.2, operated as an adjudication upon the merits. Rule 504.2 provides:

"Unless the Court in its order for dismissal otherwise specifies, a dismissal under this subdivision and *any* dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." (Emphasis supplied.)

We said that, while the construction of Rule 504.2 advanced by the defendant there, and by the defendants here, is literally plausible, it was not consonant with our understanding of the practice or the sense of the governing court rules.

"A great many cases are dismissed for lack of progress. No individual consideration is given to a particular case on a no progress dismissal list unless an attorney appears or files a motion asking that it be removed from the list. Rule 504.2 contemplates, however, that the circuit judge will exercise his judgment as to whether an involuntary dismissal shall operate as an adjudication upon the merits and that this be a particularized judgment made on the facts and merits of each case. *Such individualized judgment simply does not take place when a case is dismissed for lack of progress with dozens of other cases."* *Caughey* v. *Rozycki, supra,* p 321. (Emphasis supplied.)

___

for lack of progress but upon the defendant's motion for dismissal. In that case, individualized consideration was given to the question of whether the action should be dismissed. *Rose* v. *Rose* was not dismissed as part of "a general housecleaning by publication."

Common Pleas Court Rule 39 provides that, "In all matters not herein provided for, or not expressly prohibited or specified by statute, the Michigan Court Rules shall govern." The rules of the Common Pleas Court do not specify the consequences that flow from a no-progress dismissal, *e.g.,* whether it is with or without prejudice, whether it operates as an adjudication on the merits, and whether it bars commencement of another action asserting the claims covered by the dismissed complaint.

There being no governing Common Pleas Court rule, we should, in my opinion, conclude, for the reasons expressed in *Caughey,* that a no-progress dismissal in the Common Pleas Court, like a no-progress dismissal in the circuit court, does not bar recommencement of an action.

## II

I am confirmed in my opinion by a letter from the clerk of the Common Pleas Court and its then presiding judge, which states:

"It has always been the impression of this court, that unless a judge specifically notes 'Dismissed with Prejudice' on a file, that cases dismissed for lack of progress are always noted as simply 'Dismissed'— with the understanding that they have been dismissed without prejudice."[2]

---

[2] The "order" of dismissal in this case was entered tersely on the docket: "Oct 14, 1968 Dismissed," without any indication whether it was to be with or without prejudice.

"Sec. 3  *  *  *

"The Clerk of the Court shall on each secular day of each month prepare a list of cases by number, in which no progress has been made for six months. Said list of cases shall be published in the Detroit Legal News at least one full day preceding calling of said cases before the Presiding Judge. Notice of the call date shall be published as directed by the Presiding Judge. The Presiding Judge may make such disposition of each case as he deems just and proper." Rule 27, Common Pleas Court of the City of Detroit.

In this connection it is significant that in the Common Pleas Court the list of no-progress cases need be published in the Detroit Legal News only one day before the day on which they are to be dismissed (see fn 2).

Common Pleas Court Rule 16[3] does not require a different result. Rule 16 bars "reinstatement" of a dismissed action after six months have elapsed from the date of dismissal. The plaintiffs in this case did not attempt to reinstate the dismissed action out of time;[4] they commenced another action. By not seeking reinstatement within the six-month period, the plaintiffs lost whatever advantage there might be in reinstating a pending common pleas action in terms of the running of the statutes of limitations, of avoiding payment of additional filing fees, and of avoiding the necessity of again serving process upon defendants. But their failure to reinstate did not, when the six-month period expired, thereupon convert[5] the order dismissing for lack of progress to a with-prejudice dismissal operating as an adjudication on the merits thereby barring commencement of another action on the same claims.

GCR 1963, 504.2 provides that an order of dismissal shall not operate as an adjudication on the merits if "the court in its order for dismissal other-

---

[3] "Rule 16. Dismissals. * * *

"Sec. 2. An action dismissed for lack of progress may be reinstated in conformity with the provisions of this rule by the Presiding Judge upon good cause shown. * * *

"Sec. 4. An action may not be reinstated more than once, or after the elapse of six months from the date of the dismissal thereof."

[4] *Cf. Del Prado Motel, Inc.* v. *Charles J. Rogers, Inc.* (1968), 14 Mich App 728, where the plaintiff unsuccessfully sought to reinstate beyond the time provided by a local court rule.

[5] See *Zukor* v. *Hill* (Fla Sup 1956), 84 So 2d 554 ("we do not construe the law to mean that adjudication of the merits is suspended for the grace period [allowing one month for filing a motion to reinstate on a showing of good cause], and that upon its expiration an adjudication results from failure of the plaintiff to attempt revival of his action").

wise specifies." True, the order in this case did not *expressly* so provide. The entire "order"[6] consists of the following entry on the docket in the Common Pleas Court action: "Oct 14, 1968 Dismissed." The word "dismissed" was imprinted with a rubber stamp.

While courts speak through their orders, if the meaning of an order is unclear it can be established by parol evidence—in this case by evidence of the long-established practice of the court.[7] It is apparent from the foregoing communication received from the Clerk of the Common Pleas Court and its then Presiding Judge that the word "dismissed", when added to the docket with a rubber stamp following the publication of the name of a case in a list of no-progress cases, means that the case is dismissed without prejudice.[8] It has been frequently declared that a court's interpretation of its own judgment is entitled to great weight.[9]

Our Court is not justified in ascribing to the word "dismissed" in an order of another court a meaning

---

[6] See *Caughey* v. *Rozycki, supra,* p 320, fn 3.

[7] That parol evidence is admissible to construe a judgment, see 46 Am Jur 2d, Judgments, § 72, p 363.

[8] The judges of the Common Pleas Court have the power to promulgate court rules (*cf. Publishers Agency, Inc.* v. *Brooks* [1968], 14 Mich App 634); indeed, the no-progress dismissal rule of the Common Pleas Court was promulgated by the judges of that court. Although the rules of the Common Pleas Court do not expressly provide as to the consequence of a no-progress dismissal and we may, therefore, look to the General Court Rules in that regard, another approach to the matter, equally sound, would be to interpret the Common Pleas Court Rules, in the light of the interpretation placed upon them by the common pleas judges and the established practice relied on by attorneys practicing in that court, as meaning that no progress by publication dismissals shall not have the consequence of operating as an adjudication on the merits barring recommencement of the action.

[9] See *Hofer* v. *Hofer* (1940), 35 Ohio L Abs 486 (42 NE2d 165, 167); *Cooper* v. *Cooper* (Iowa, 1968), 158 NW2d 712, 714; *Hubbell* v. *Buhler* (1889), 113 NY 653 (21 NE 176); *Farmers' Loan & Trust Co.* v. *Bankers' & Merchants' Tel. Co.* (1890), 119 NY 15 (23 NE 173, 174). See, generally, 49 CJS, Judgments, § 436, pp 862, 863.

different than that intended by the court which entered it—a meaning different than the meaning understood and relied on by the profession over an extended period of time.

## III

Rule 504.2 is based on FR Civ P, 41(b). The Federal courts have recognized that the "any dismissal" clause is not to be rigidly applied. When faced with the task of deciding particular cases, the Federal courts have found it necessary to recognize exceptions to Rule 41(b)'s all-encompassing "any dismissal" clause other than the express exception for dismissals for lack of jurisdiction; some of these exceptions have been incorporated in later versions of Federal Rule 41(b).[10] The Federal courts and state courts whose rules are modeled on the Federal rules[11] have thereby recognized that revisers are not paragons and that all factual situations are not necessarily in contemplation when such sweeping language is used.

"In several factual settings some courts have judicially qualified, or 'interpreted' rule 41(b) so as to preclude the dismissal of an action from operating as an adjudication on the merits, although the rule on its face, would appear to warrant the opposite

[10] See 5 Moore's Federal Practice (2d ed), § 41.01[1], p 1008.

[11] See *Rambur* v. *Diehl Lumber Company, Inc.* (1964), 144 Mont 84 (394 P2d 745), where the Montana Supreme Court ruled, despite the literal language of its rule, modeled on Fed Rules Civ Proc, 41 (b), that a particular dismissal did not operate as an adjudication on the merits; *Otero* v. *Sandoval* (1956), 60 NM 444 (292 P2d 319): the "any dismissal" provision applies only "to a dismissal of which the party affected has notice. Notice and hearing, or an opportunity to be heard, is essential to a decision upon the merits. Any other conclusion could well give rise to serious injustice and that without remedy."—that notice by publication may not suffice where it is practicable to give personal notice see *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 US 306 (70 S Ct 652, 94 L Ed 865); similarly see *Zukor* v. *Hill, supra,* and *Caughey* v. *Rozycki, supra.*

result." Anno: Judicial qualification of provision of Rule 41(b) of Federal Rules of Civil Procedure that dismissal for failure to prosecute or to comply with Federal rules or court order, and certain other dismissals, operate as adjudication upon merits. 5 ALR Fed 897, § 2(a), p 900.

There is no provision for general housecleaning no-progress dismissals in the Federal Rules of Civil Procedure. Some United States district courts have promulgated local rules providing for no-progress calendars, but we have found no case holding that a general housecleaning dismissal for lack of progress by publication operates as an adjudication on the merits because it comes literally within the "any dismissal" language of Rule 41(b).[12] In this con-

---

[12] It appears upon a survey of the court rules and practice in the several United States District Courts that, either by express requirement of a local court rule or by the invariably followed practice, cases are dismissed for lack of progress only after an order to show cause or like writing has been served upon or sent to the attorneys in the case. It also appears that with few exceptions those cases that are dismissed for lack of progress are dismissed without prejudice. In a few jurisdictions, cases are dismissed with prejudice but, again, this is only after notice personally directed to the attorneys in the case.

A summary of the rules of the United States District Courts providing for dismissal for lack of progress based on the responses received from 58 of the courts follows:

I. Local rule providing for dismissal only after order to show cause or personal notice to attorneys:

A. silent as to adjudicative effect of dismissal,

(i) dismissal normally without prejudice:

1. Nev
2. WD Mich
3. SD Fla
4. ND Ohio
5. NM
6. ND Fla
7. SD NY
8. ED Ill
9. Mass
10. ED NC
11. ED Wis
12. MD Fla
13. Kan
14. Or

(ii) dismissal normally with prejudice:
  1. Idaho
  2. ND NY
  3. Ariz
(iii) effect of dismissal depends on particular case:
  1. ED Mich
  2. Puerto Rico
  3. Hawaii
  4. ED Cal
  5. Guam
  6. ND Cal
  7. ED La
  8. MD Pa
B. express provision for dismissal without prejudice:
  1. Me
  2. NH
  3. DC
  4. SD Cal
  5. CD Cal
  6. WD NY
C. express provision for dismissal with prejudice:
  1. ND W Va
  2. MD

II. Local rule not providing for personal notice to attorneys:
A. silent as to adjudicative effect of dismissal; dismissals are without prejudice:
  1. ND Ill (practice is to issue order to show cause)
  2. Alaska
  3. Neb (practice is to issue order to show cause)
  4. ND (practice is to issue order to show cause)
  5. ND Ga (generally dismiss without notice)
B. express provision for dismissal without prejudice:
  1. WD Tenn (practice is to give notice)
  2. SD Ohio (generally notice is given but some dismissals are without notice to the attorneys)
C. express provision for dismissal with prejudice:
  None

III. No local no progress rule:
  1. Colo
  2. RI
  3. SD Ala
  4. Ga
  5. Vt
  6. ED Okla
  7. ND Ark
  8. ND Okla
  9. MD NC
  10. ED Tenn
  11. Mont
  12. ED Tex
  13. SD Iowa
  14. SD Miss
  15. ND Ala
  16. MD Ga

nection, we observed in *Caughey* v. *Rozycki, supra,* p 322, fn 6:

"That being the structure of the Federal Rules of Civil Procedure and the state of the Federal case law *today,* it is greatly to be doubted whether the revisers of our court rules and judicature act had in mind, in the early 1960s when this work was being done, the kind of case we now have before us today when they copied into Rule 504.2[13] this language of Rule 41(b). *Cf. Zaroff* v. *Holmes* (1967), 127 App DC 1 (379 F2d 865, 877), holding that a local rule providing for dismissal of an action in the event of counsel's failure to appear at a pretrial conference which was silent as to whether such a dismissal would be with prejudice would be interpreted as not intending that the dismissal be with prejudice; that court observed that if the local rule was 'to have the effect claimed for it, it should speak much more clearly to that end than it does now.' " (Emphasis by the Court.)

Moreover, the Federal courts, because of the operative effect of an adjudication on the merits, have taken a restricted view of a trial judge's power to dismiss a case with prejudice for lack of prosecution *even after individualized consideration.* A number of United States Courts of Appeals have declared

---

17. SC

18. ED Va

It is significant that only one jurisdiction provides for notice by publication, the ND Ill, and that there the practice, nevertheless, is to send an order to show cause to the attorneys in the case before any action is taken; further, that if the case is dismissed it is without prejudice.

It therefore appears that the rule for which the majority write based on their interpretation of the "any dismissal" language of Fed Rules Civ Proc, 41(b), on which our Rule 504.2 is based, has no precedence in the practice of the United States District Courts. No United States District Court dismisses a case with prejudice for lack of progress without notice personally directed to the attorneys before such action is taken.

13 Erroneously stated in original as Rule 501.3.

that dismissal of an action with prejudice is a drastic remedy which should be used only in "extreme situations",[14] and have not hesitated to set aside dismissals not adequately supported.[15]

"We are fully aware of the impelling need for cooperation from parties and attorneys to keep litigation on congested dockets moving; but except in extreme circumstances, the court should first resort to the wide range of lesser sanctions which it may impose upon the litigant or the derelict attorney, or both." *Flaksa* v. *Little River Marine Construction Co., Inc.* (CA 5, 1968), 389 F2d 885, 888.

Professor Moore has observed:

"What constitutes 'failure to prosecute,' of course, depends on the facts of the particular case, and the court should consider all the pertinent circumstances in exercising its discretion. The *mere lapse of time does not justify dismissal* if the plaintiff has not been lacking in diligence. *Expedition for its own sake is not the goal.*"[16]  (Emphasis supplied.)

Implicit in the foregoing statement is that the trial court must exercise its discretion—and exercise it carefully—before entering an order which operates as an adjudication on the merits (thereby bar-

---

[14] *Flaksa* v. *Little River Marine Construction Co., Inc.* (CA 5, 1968), 389 F2d 885, 887; *Independent Productions Corporation* v. *Loew's, Inc.* (CA 2, 1960), 283 F2d 730, 733; similarly, see *Durgin* v. *Graham* (CA 5, 1967), 372 F2d 130, 131.

[15] *Flaksa* v. *Little River Marine Construction Co., Inc., supra;* *Sykes* v. *United States* (CA 9, 1961), 290 F2d 555 (vacating a dismissal under a local no-progress rule, the court noted at 557, "Dismissal is what counsel deserves. The client deserves a little better."); *Lyford* v. *Carter* (CA 2, 1960), 274 F2d 815; *Glo Co.* v. *Murchison and Company* (CA 3, 1967), 397 F2d 928; *Davis* v. *Operation Amigo, Inc.* (CA 10, 1967), 378 F2d 101, 103 ("A dismissal, with prejudice, is a harsh sanction and should be resorted to only in extreme cases. * * * [T]he procedural history of each case must be examined in order to make such determination. The judge must be ever mindful that the policy of the law favors the hearing of a litigant's claim upon the merits.")

[16] 5 Moore's Federal Practice (2d ed), § 41.11[2], p 1119.

ring *any* adjudication on the merits). It is, of course, perfectly clear that when a clerk of a court dismisses countless cases with a rubber stamp there has been no individualized consideration and no exercise of discretion by a judge.

## IV

Before changing the rules in midstream, and that is what we do when we give a new and different meaning to the word "dismissed" as used in the context of a no-progress dismissal—before holding that a no-progress dismissal by publication operates as an adjudication on the merits barring recommencement of the action—we should have better evidence than we do that what may be gained in "orderly administration of *justice*" is not offset by what is lost in depriving innocent litigants of their day in court; better evidence that what is gained by appearing to be doing something about moving along the business of the courts is not offset by the injury to the image of justice done by punishing litigants for delays by their attorneys. (In this connection it should be remembered that not infrequently cases are dismissed for lack of progress, not because of delay by the plaintiff's lawyer, but simply because no action has been taken by either side within the designated period of time, which sometimes means the delay has been by defendant's attorney.)

There is no evidence that a large number of cases dismissed for no progress are subsequently reinstituted. The rule for which the majority writes will not make a significant contribution to decreasing the backlog of the trial courts. It may, however, add another issue to be litigated.

As the majority points out, a case dismissed for lack of progress can be reinstated. If reinstatement

is automatic, then nothing is accomplished by the majority opinion except the possible establishment by court rule of a special "statute" of limitations applicable to cases dismissed for no progress.[17] If reinstatement is to be granted only for good cause, then there is another issue to be litigated in cases dismissed for no progress when the plaintiff wishes to start the action again. It will then be necessary to develop at the trial and appellate levels a jurisprudence as to what constitutes good cause for reinstatement, a development which until now has not been necessary because ordinarily it was not of much importance whether an action was reinstated as long as it could be reinstituted.[18]

Surely, the exercise of the reinstatement power will not be left to the unstructured discretion of trial judges to be granted as a matter of grace to some litigants and denied to others unable to obtain the trial court's favor. And surely our Court, which is always reluctant to grant an application for leave to appeal from an interlocutory order, will ordinarily avoid reviewing grants of reinstatement until after the entire litigation has concluded at the trial level, with the result that there will be another issue

[17] The "special statute" would be six months as to no-progress dismissals by the Common Pleas Court. Until the adoption of new rules on November 1, 1970, the time limit for reinstatements was one year as to dismissals by the Wayne Circuit Court (see Wayne Circuit Court Rule 17.7, effective March 21, 1965, reprinted in Michigan Court Rules, p 564, and *Del Prado Motel, Inc.* v. *Charles J. Rogers, Inc.*, *supra* fn 4.) On November 1, 1970, new rules were adopted by the Wayne Circuit Court and the one-year limitation on reinstatement was eliminated and the fees for reinstatement were increased.

It is seriously to be doubted whether the Supreme Court has empowered the several courts of this state to establish varying limitation periods *replacing* the statutorily-prescribed periods.

[18] The statutes of limitations are tolled during the pendency of an action; see *Caughey* v. *Rozycki*, supra fn 10. Thus, only in a case where the statutory limitation expired after the case was dismissed and during the period the case could be reinstated was it likely to have been important whether it could be reinstated.

to be argued on appeal in cases which have been
dismissed for lack of progress and later reinstated
—did the trial judge act properly in reinstating the
action?

# V

The argument that no-progress dismissals must
be deemed to be dismissals with prejudice in order
to enforce the rule which permits a voluntary dis-
missal by the plaintiff after the defendant has re-
sponded only with the court's permission[19] does not
survive analysis.  The assumption underlying the
argument is that the plaintiff is taking advantage
of the no-progress rule to achieve a desired dis-
missal.  If the dismissal is desired, it is a *voluntary*
dismissal.  The court, by promulgating the no-prog-
ress rule, facilitates—indeed, it orders—such a de-
sired (voluntary) dismissal.  (The seeming conflict
in policies is just another case of two conflicting
values and the subordination of one to another: the
need for a no-progress rule which operates mechan-

---

[19] "Rule 504.  Dismissal of Actions.

".1  Voluntary Dismissal; Effect.

"(1) By Plaintiff; by Stipulation.  Subject to the provisions of
subrule 208.5 an action may be dismissed by the plaintiff without
order of court and upon payment of costs (a) by filing a notice of
dismissal at any time before service by the adverse party of an
answer or of a motion under Rules 116 or 117 whichever first occurs,
or (b) by filing a stipulation of dismissal signed by all the parties.
Unless otherwise stated in the notice of dismissal or stipulation, the
dismissal is without prejudice, except that a dismissal under (a)
above operates as an adjudication on the merits when filed by a
plaintiff who has once dismissed in any court an action based upon
or including the same claim.

"(2) By Order of Court.  Except as provided in subrule 504.1(1),
an action shall not be dismissed at the plaintiff's instance unless by
order of court upon such terms and conditions as the court deems
proper.  If a counterclaim has been pleaded by a defendant prior to
the service upon him of the plaintiff's motion to dismiss, the court
shall not order the action dismissed over the defendant's objection
unless the counterclaim can remain pending for independent adju-
dication by the court.   Unless otherwise specified in the order, a
dismissal by order of court under this paragraph is without prejudice."

ically overbalancing the policy concerning voluntary nonsuits.)[20]   Voluntary dismissals under the rule are dismissals *without* prejudice unless otherwise specified in the order.   Since, in this hypothesis, the dismissal is a desired and, hence, a voluntary dismissal, and since it was ordered by the court (and the order did not otherwise specify), it is a dismissal without prejudice.

## VI

A defendant who wishes to protect himself against a no-progress dismissal by publication not operating as an adjudication on the merits and not barring reinstitution of the action can, of course, move for an involuntary dismissal under GCR 1963, 504.2[21] for lack of prosecution, as was done in *Rose* v. *Rose* (see fn 1).   Then the question of whether the case should be dismissed with prejudice can be considered on its merits.   Thus, to paraphrase the majority opinion, a defendant who thinks that a general housecleaning no-progress dismissal should operate as a bar to recommencement of the action is not without rem-

---

[20] It is entirely true that unless no-progress dismissals by publication are with prejudice, plaintiffs who might not obtain a voluntary nonsuit with the court's permission (*i.e.*, without prejudice) might achieve the same result by sitting back and waiting for the case to be dismissed for lack of progress.   Viewing the matter from that frame of reference, the question becomes whether (conceding the necessity of a no-progress-dismissal-by-publication rule and the impracticability of considering individually a case that appears on a no-progress docket where neither attorney appears in response to the published notice) the interest in requiring permission for a voluntary nonsuit should outweigh the interest in adjudication on the merits.   In my opinion, the interest to be preferred is the interest in adjudicating cases on their merits.

[21] "Rule 504.   Dismissal of Actions.   *   *   *

".2 Involuntary Dismissal; Effect.   For failure of the plaintiff to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.   *   *   *   Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits."

edy; he can, if he is not dilatory, seek an involuntary dismissal which, if granted by the court without a reservation that the dismissal is without prejudice, would, indeed, under Rule 504.2, operate as an adjudication on the merits.