LAIDLER v NATIONAL BANK OF DETROIT

Docket No. 71153. Submitted January 3, 1984, at Detroit.—Decided
March 21, 1984.

Betty Laidler, a former employee of the National Bank of Detroit,
individually and on behalf of others similarly situated, brought
an action in Wayne Circuit Court against NBD alleging that
the defendant discriminated against her and others in its
maternity leave policies. The defendant moved for accelerated
and summary judgment without filing an answer. Subse-
quently, the Wayne County Clerk dismissed the case for lack of
progress. The court, Irwin H. Burdick, J., denied the plaintiff's
motion to reinstate the case. The Court of Appeals denied
plaintiff's delayed application for leave to appeal. Thereafter,
the plaintiff applied for leave to appeal to the Michigan Su-
preme Court. The Supreme Court, in lieu of granting leave to
appeal, remanded the case to the Court of Appeals for consider-
ation as on leave granted, 417 Mich 976 (1983). *Held:*

The circuit court's dismissal of the action should be reversed.
Although plaintiff's counsel was guilty of neglect in not ascer-
taining what had happened to plaintiff's case, because the
circuit court failed to send notice that the case was on the no
progress docket, its order of dismissal was improper and it was
without discretion to deny the plaintiff's motion for reinstate-
ment of the case because under the facts of the case reinstate-
ment was a matter of right.

Reversed and remanded.

1. COURTS — DISMISSAL OF ACTIONS — LACK OF PROGRESS.

A computer-generated dismissal of a case in circuit court for lack
of progress, without any consideration being given to the case
by a circuit judge, is a valid order of dismissal.

2. COURTS — REINSTATEMENT OF CASES.

The denial of reinstatement of a case in circuit court after its

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 48, 50,
52, 61.

[2, 3] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 91, 92.

[3] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 63, 91.

dismissal for no progress is discretionary providing the dismissal was regular and within the statutory mandate.

3. COURTS — REINSTATEMENT OF CASES.

Reinstatement of a case in circuit court is a matter of right and not discretionary with the court where a party had received no notice from the court prior to dismissal of the lawsuit.

*David W. Sinclair* and *Beverly Safford,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Ted T. Amsden* and *Terrence E. Haggerty),* for defendant.

Before: J. H. GILLIS, P.J., and T. M. BURNS and R. ROBINSON,* JJ.

R. ROBINSON, J. Plaintiff, a former employee of defendant bank, filed her complaint as a purported class action suit in August of 1975. She alleged that defendant had discriminated against her and its other employees similarly situated, in its maternity leave policies. Plaintiff was employed by defendant from November, 1966, to June, 1974, and alleges that during her employment she was on maternity leave from March, 1968, to September, 1968, and again from December, 1973, to June, 1974. She left her employment voluntarily after her second pregnancy. She based her claim for relief on the Michigan Constitution, the common law, and the Michigan State Fair Employment Practices Act. Without filing an answer, defendant, on September 12, 1975, filed a motion for accelerated and summary judgment. The following chronological recital of events traces the subsequent course of this suit through its dismissal

* Former circuit judge, sitting on the Court of Appeals by assignment.

for lack of progress and plaintiff's efforts to revive it.

1. August 22, 1975: Complaint filed.

2. September 12, 1975: Defendant's motions for accelerated and summary judgment filed.

3. May 5, 1976: Motion for accelerated judgment granted in part and denied in part (granted as to claims arising out of her first pregnancy as barred by the statute of limitations).

4. September 30, 1976: Notice of impending dismissal for no progress issued.

5. December 3, 1976: Notice of impending dismissal for no progress issued.

6. May 27, 1977: Defendant filed motion for reconsideration of the court's May 5, 1976, order (this motion following the decision in *Gilbert v General Electric Co,* 429 US 125; 97 S Ct 401; 50 L Ed 2d 343 [1976], which ruled, under federal law, against plaintiff on her pregnancy discrimination claim; and the remand on May 9, 1977, by the Michigan Supreme Court, of *Taylor Federation of Teachers v Taylor Bd of Ed,* 400 Mich 803; 258 NW2d 1 [1977], for reconsideration in light of *Gilbert, supra).*

7. September 6, 1977: Order entered denying defendant's motion for reconsideration "without prejudice pending dispositive appellate ruling in" *Taylor, supra.*

8. November 30, 1977: Notice of no progress issued setting dismissal date as December 12, 1977.

9. April 11, 1978: Suit dismissed by clerk for lack of progress.

10. February 20, 1979: *Taylor Federation of Teachers v Taylor Bd of Ed,* 405 Mich 848, dismissed as moot.

11. April 28, 1980: Plaintiff's counsel contacted defendant's counsel to reschedule hearing on de-

fendant's motion for accelerated judgment and was informed case was dismissed.

12. May 3, 1980: Plaintiff filed motion to reinstate.

13. June 13, 1980: Trial court denied plaintiff's motion to reinstate.

14. December 28, 1981: Plaintiff filed delayed application for leave to appeal denial of reinstatement.

15. March 22, 1982: Court of Appeals denied delayed application for leave to appeal per 18-month limitation of GCR 1963, 806.2, and for lack of merit in grounds presented.

16. April 26, 1983: Supreme Court remanded to Court of Appeals for consideration as on leave granted, 417 Mich 976.

This case presents the typical clash between the principle that litigation should, if possible, be disposed of on its merits, and the equally meritorious principle that litigation should be put to rest without undue delay. What lends cogency to plaintiff's position is the fact that, if she now has to refile her suit, it is barred by the statute of limitations. Defendant's equally cogent concern is that, particularly as to the class action aspect, if there eventually proves to be a lawsuit, the longer the delay, the more difficult its problems of proof become.

Plaintiff's counsel's apparent inability to grasp the procedural status of his client's case has resulted in his repeatedly obscuring the sole question before the court—lack of progress—by attempting to try, on its merits, a case which has never been at issue. When he does address the question before us, he again fails to grasp the posture of the case and attempts to cast the burden on defendant's counsel to keep the case alive.

For example, he argues that defendant's counsel should have kept the case from lapsing into no progress status by filing an "at issue" praecipe as required by Wayne County Circuit Court Rule (WCCCR) 9.8 which states:

"An 'at issue' praecipe shall be filed with the clerk of the Court * * * with the answer to the complaint."

Such a praecipe would have been untimely since defendant properly filed its motion for accelerated judgment instead of answering.

Counsel for plaintiff further argues that defendant's counsel should have filed a praecipe to continue the case. Assuming that defendant had an interest in keeping the case alive, this argument overlooks the verbal agreement by plaintiff's counsel, which he does not deny, that he would assume responsibility for keeping the case off the no progress docket.

Plaintiff's counsel argues, too, that defendant's counsel should have renewed its motion after *Taylor, supra,* was finally disposed of. Defendant was under no obligation to renew its motion for accelerated judgment. The earlier order denying its motion did not mandate it, and by that time defendant was aware that the case had been dismissed for lack of progress.

At the first hearing on defendant's motion for accelerated judgment, the trial judge, while reserving decision on some of the class action aspects of the suit, denied the motion insofar as it addressed the substance of the complaint (discrimination). It did not hold the case in abeyance, and it remained on the trial docket.

At the hearing on defendant's motion for reconsideration, held on August 26, 1977, the trial

court, after referring to the unsettled state of the law concerning pregnancy discrimination, closed with the following comment from the bench:

"As far as this court is concerned the waters are muddy and the court at this time is just going to let it remain muddy and see whether or not there are any further clarifications by any of the Courts. All right, your motion is denied without prejudice. You may bring it up again when the water is a little clearer."

Likewise did the court's signed order of September 6, 1977, make it clear that nothing was held in abeyance:

"It is hereby ordered that the defendant's motion for reconsideration and dismissal with prejudice be denied without prejudice pending dispositive appellate ruling on the issues of the state law in *Taylor Federation of Teachers v Board of Education for the Taylor School District* which has been reported in 72 Mich App 304 (1976)."

Although both sides refer in their briefs to the fact that the above action held the suit in abeyance, this view is contradicted by their verbal agreement that plaintiff's counsel would be responsible for keeping the case off the no progress docket. Thus, they recognized that the suit would continue on the active docket, but apparently with their tacit understanding that they would take no further action until *Taylor, supra,* was disposed of, except for such action by plaintiff's counsel as might be necessary to prevent its dismissal for lack of progress.

WCCCR, so far as they concern no progress cases, state:

"Rule 17.1 There shall be prepared a no-progress

calendar on which there shall be listed in the following actions:

"(a) Action not at issue in which no progress has been made for seven (7) months.

\* \* \*

"Rule 17.3 The calendar shall state that a listed action will be dismissed by court order on the second Monday (or the following working day, if Monday is a legal holiday) of the next term, unless by that day:

\* \* \*

"(c) the court extends the time for a fixed time on good cause shown.

"Rule 17.4 On the last working day of each term the clerk shall mail a no progress notice to the attorneys of record in each case listed pursuant to subrule 17.1."

On three occasions, September 30, 1976, December 3, 1976, and November 30, 1977, the court clerk issued notices of no progress, each establishing a dismissal date in accordance with Rule 17.3, or approximately two weeks after the issuance of the notice. Apparently, in each instance, plaintiff's counsel fulfilled his verbally assumed responsibility to save the case, since no order of dismissal followed the notice.

On April 11, 1978, a computer-generated order issued from the clerk's office dismissing the case for lack of progress. Plaintiff's counsel denies receiving it, speculating that the break in communication may be attributable to the fact that he was at the time in the process of moving his office location. Defense counsel states that he received the notice of dismissal although he could not locate it in his file. Neither party received the notice of no progress which should have preceded the dismissal order, and an examination of the trial court file leads us to believe that one was never issued.

On February 20, 1979, about ten months after the case was dismissed, the Michigan Supreme Court dismissed *Taylor, supra,* without deciding the question of pregnancy discrimination. On April 28, 1980, 2 years after dismissal, and 14 months after *Taylor, supra,* was put to rest, plaintiff's counsel learned of the dismissal when he contacted defendant's counsel to inquire about rescheduling defendant's motion. Shortly thereafter, plaintiff's counsel filed a motion for reinstatement. The trial judge offered to reinstate the plaintiff's case, but not the class action, his reasoning being that the delay had created too many problems of proof in preparing a defense to a class action. However, plaintiff's counsel insisted on tying the two claims together, so the trial judge denied the motion for reinstatement in its entirety.

Plaintiff questions whether a computer-generated dismissal, done automatically without any consideration by the trial judge, is, in fact, an order. We think it is. We recognized that in a metropolitan circuit such as Wayne Circuit, the courts would find it difficult if not impossible to function without the aid of computers. We recognize, too, that even in circuits not using computers no progress dismissals are generally handled ministerially; the circuit judge does not consider the matter, *Caughey v Rozycki,* 22 Mich App 317; 177 NW2d 257 (1970), nor is he generally called upon to exercise his discretion.

Plaintiff is correct when she argues that reinstatement after dismissal under a no progress statute or rule is not always discretionary:

"[D]enial of reinstatement after dismissal under the no progress statute is discretionary *providing the dismissal is regular and within the statutory mandate."*

*Hoad v Macomb Circuit Judge,* 298 Mich 462, 469; 299 NW 146 (1941). (Emphasis supplied.)

Neither plaintiff nor defendant received, prior to dismissal, the no progress notice which is required by WCCCR 17.4. Had plaintiff received a notice of dismissal, the two-year delay thereafter, without good cause shown, would have justified the trial court in denying reinstatement even in the absence of the no progress notice. Was such a notice received by plaintiff? Her counsel says no. Defense counsel says he received one. Neither WCCCR 17 nor GCR 1963, 501, requires that the litigants be notified of the dismissal. The computer printout from the Wayne County Clerk's office shows an order of dismissal entered by the computer on April 11, 1978, but it is silent as to whether the parties were so notified. Nothing in the record indicates whether it was customary for the court to notify the parties of a dismissal.

Clearly, plaintiff's counsel must be guilty of neglect in sitting idle for two years before taking steps to ascertain what had happened to his client's case. But, before the court is allowed to impose the harsh remedy of dismissal, we believe it should have its own house in order. Since the court failed to follow the mandate of WCCCR 17.4 by neglecting to send a notice that the case was on the no progress docket, its order of dismissal was improper, *Barnes v Wayne Circuit Judge,* 220 Mich 120; 189 NW 896 (1922), and it was without discretion to deny reinstatement since such was a matter of right. *Belt v Davis & Randall, Inc,* 62 Mich App 315; 233 NW2d 268 (1975).

Reversed and remanded for further proceedings pursuant to this opinion.