WICKINGS v ARCTIC ENTERPRISES, INC

Docket Nos. 218171, 220586. Submitted September 13, 2000, at Detroit. Decided December 26, 2000, at 9:30 A.M. Leave to appeal sought.

Gary Wickings brought an action in the Tuscola Circuit Court against Arctic Enterprises, Inc., alleging negligence and breach of warranty concerning a snowmobile that was manufactured by the defendant and on which the plaintiff suffered injury. After failing to reach a settlement, the parties informed the court, Patrick R. Joslyn, J., that they would submit the matter to binding arbitration. The court advised the parties to file a judgment or final order reflecting the arbitration proceeding within thirty days and that the failure to do so would result in dismissal of the action without further notice to the parties. The court eventually dismissed the action for lack of progress. Eighteen months later, the plaintiff filed a motion to compel arbitration or reinstate the action, arguing that the defendant should be bound by an agreement between the parties' attorneys to either submit the matter to arbitration or reinstate the action with the defendant not raising the statute of limitations as a defense. As evidence of the agreement, the plaintiff submitted letters written by the attorneys to each other after the court dismissed the action. The court denied the plaintiff's motion. The plaintiff then filed in the same court a second action against the defendant, raising the same products liability claims. The defendant moved for summary disposition on the ground that the action was barred by the statute of limitations. The court granted the defendant's motion. The plaintiff appealed the denial of his motion to reinstate the first action (Docket No. 218171) and the grant of summary disposition for the defendant in the second action (Docket No. 220586). The appeals were consolidated.

The Court of Appeals *held*:

1. The Court of Appeals, which has jurisdiction of an appeal of right from a final judgment or a final order, has jurisdiction over the plaintiff's claim of appeal. A final judgment or a final order is the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of the parties. The final order appealable as of right from the plaintiff's first action is the order denying the plaintiff's motion to reinstate the action, not the order

of dismissal for lack of progress. The plaintiff appealed as of right from the order denying reinstatement of the action within the twenty-one-day period required by MCR 7.204.

2. The trial court did not abuse its discretion in denying the plaintiff's motion to reinstate the action dismissed for lack of progress. The long delay in seeking reinstatement of the action was indicative of a lack of good cause for reinstatement.

3. The trial court did not err in granting summary disposition for the defendant in the second action. The defendant properly raised the statute of limitations in defense of the second action inasmuch as, under the terms of the parties' agreement, the defendant's waiver of the statute of limitations was limited to the first action.

Affirmed.

1. APPEAL — DISMISSALS FOR LACK OF PROGRESS — MOTIONS FOR REINSTATEMENT OF ACTION — APPEALS AS OF RIGHT.

Appeal as of right by a plaintiff whose action is dismissed for lack of progress and whose motion for reinstatement of the action is denied is from the order denying reinstatement, not the order of dismissal (MCR 2.502[C], 7.203[A][1]).

2. ACTIONS — DISMISSALS FOR LACK OF PROGRESS — REINSTATEMENTS — GOOD CAUSE — APPEAL.

Factors considered by a court determining whether there is good cause for reinstating an action dismissed for lack of progress include procedural or technical error in dismissing the case for lack of progress, the movant's actual diligence before dismissal, justification for the movant's failure to make progress before dismissal, and potential prejudice to the nonmovant if the action is reinstated; the trial court's grant or denial of a motion for reinstatement is reviewed on appeal for abuse of discretion (MCR 2.502[C]).

*Lopatin, Miller, Freedman, Bluestone, Herskovic, Heilmann & Domol* (by *Paul L. Kaliszewski*), for the plaintiff.

*Beach & Ager* (by *Eugene H. Beach, Jr.*), for the defendant.

Before: WHITBECK, P.J., and FITZGERALD and MARKEY, JJ.

PER CURIAM. In Docket No. 218171, plaintiff Gary Wickings appeals as of right the trial court's February

19, 1999, order denying his motion to reinstate his original products liability action against defendant Arctic Enterprises, Inc. (Arctic). In Docket No. 220586, plaintiff Gary Wickings appeals as of right the trial court's June 18, 1999, order granting defendant Arctic's motion for summary disposition pursuant to MCR 2.116(C)(7) in the action Wickings filed after the trial court denied his motion to reinstate the original action or compel arbitration. We affirm in both appeals.

### I. FACTUAL BACKGROUND

Both of these consolidated cases arise out of the same factual circumstances. According to the complaint and the trial court's description of the events in this case in its scheduling order in Docket No. 218171, Wickings was using a twenty-year-old Arctic Cat El Tigre snowmobile when the track slipped off the vehicle on December 1, 1992. Wickings alleged that he suffered "open fractures of the right tibula and fibula," as well as pain and suffering, psychological injuries, humiliation, and lost wages. Evidently, Arctic had not manufactured snowmobiles in more than fifteen years by the time Wickings filed suit, it no longer had immediate access to related documents, and it could locate only one employee who knew about that portion of its business.

### II. DOCKET NO. 218171

Wickings filed his complaint in this action on November 30, 1995, alleging negligence and breach of warranty. Arctic, which retained Alvin Rutledge and Mary Dresbach as counsel, answered the complaint,

generally denying the allegations and asserting a number of affirmative defenses not relevant to this appeal. Following a pretrial hearing on March 18, 1996, Wickings initially made progress toward complying with the scheduling order. The parties attended a second pretrial hearing on April 10, 1997, at which time they told the trial court that the case was going to binding arbitration, according to the May 12, 1997, notice in the lower court record. The trial court then advised the parties, "A judgment or final order reflecting the proceeding noted [arbitration] shall be filed with[in] 30 days of the issuance of this notice. Failure to file said order will result in dismissal of this action without further notice to the parties." There is no further information in the record concerning the parties' conduct before the trial court, sua sponte, entered an order dismissing the action "without prejudice" on June 13, 1997.

Eighteen months later, on January 19, 1999, Wickings filed a motion to compel arbitration or to reinstate the action. He argued that Arctic should be bound by the agreement between the parties' attorneys either to submit to arbitration or to reinstate the action without asserting the statute of limitations as a defense. In the brief, he added some factual details not apparent from the record. For instance, he explained that the case had proceeded through mediation and the parties had attempted to settle the case without success before the trial court dismissed it. Attached to the brief were several letters indicating what occurred after the trial court dismissed the case. In the first letter, dated July 7, 1997, Jeffrey Feldman, Wickings' attorney, sent a letter to Dresbach, Arctic's counsel, which briefly stated:

> Please send me the draft arbitration agreement, per our discussions, at your earliest convenience. Otherwise, I will need to take you up on your assurance that you would sign a Stipulation to Reinstate, and not assert the Statute of Limitations. I'm beginning to lose sleep over this.

Two months later, on September 10, 1997, Feldman followed up on the first letter, writing:

> Following my letter of July 7, 1997, we eventually had a discussion concerning the status of this case. You and I discussed potential settlement figures, as well as your providing me with a draft arbitration agreement so that we could work out the language. Additionally, on several occasions, you have represented to my staff and me that I would receive a faxed letter to the effect that you would stipulate to reinstate the circuit court action if we so desired, and that your client would not assert any Statute of Limitations defense to that action. To date I have not received that letter, a draft arbitration agreement, nor any response to our settlement discussions.
>
> I attempted to reach you a couple of times today, but have not yet received a return phone call. *Please* turn your immediate attention to these issues, and respond by fax in writing if possible to document your agreement with my understanding of the events.

Dresbach responded that same day:

> This letter confirms our agreement regarding the status of this case. We are attempting to reach a settlement agreement. If we are unable to do so within 3 weeks, I will forward a proposed arbitration agreement for your approval, as it is our mutual intent to arbitrate this case.
>
> If for some unforeseen reason our attempts to achieve a settlement and[/]or arbitration agreement fail I will stipulate to reinstate the Circuit Court action, and will waive the statute of limitations as a defense.

The parties did not settle the case within three weeks as they had anticipated as reflected in an April 2, 1998, letter from Sheldon Miller, a member of Feldman's law firm, to Dresbach, which stated:

> I have made several calls to your office in an attempt to determine if this matter was going to be arbitrated and/or we were going to reinstate the Circuit Court action.
>
> My secretary spoke with Al Rutledge who indicated he would have you take care of this matter. That was over a month ago. We have placed three or four phone calls to you, all to no avail.
>
> What are the chances you can call me and we can discuss this matter ????

Paul Kaliszewski, another member of Feldman's firm, took over the case in November 1998 and promptly sent Arctic's new attorney, Eugene Beach, the following letter on November 11, 1998:

> Please be advised that I have now assumed handling of the above-captioned matter. It is my understanding from conversations with Jeffrey Feldman that you are now handling the defense of the case. My review of the file indicates that our respective predecessors agreed to arbitrate this case but, for some reason, never did. I would like to get the matter back on track.
>
> Please contact me at your earliest convenience so that we can discuss this matter and see what needs to be done.

Beach's response, dated November 16, 1998, made three separate points. First, the letter asserted that there was no case pending. Second, the letter suggested that previous defense counsel had failed to communicate with Arctic just as it had failed to communicate with Wickings' counsel. As a result, Arctic "was totally unaware of and *never* authorized any discussion of settlement, whether through arbitration or

otherwise" and *"never* knew of, much less authorized, any supposed post-dismissal 'agreement' to resurrect the litigation or waive any defenses it might have thereto." Finally, the letter asserted that Arctic thought it had a strong defense to the action and left Wickings to whatever remedies it might have in court.

At the February 19, 1999, oral arguments on the motion to compel arbitration or reinstate the action, Wickings stressed the written evidence of the parties' intent to submit to arbitration or reinstate the action, also noting that there would be no prejudice to Arctic by granting the motion. Arctic, however, emphasized their failure to enter into a written arbitration agreement, the fourteen-month delay between Dresbach's letter to Feldman, and Kaliszewski's follow-up letter to Beach as factors contradicting the good cause necessary to reinstate the action. The trial court found that Wickings and Arctic had agreed to arbitrate the case, but questioned the effect such an agreement could have on the order dismissing the case. The trial court also commented on the attorney's failure to resolve the case or move for reinstatement in a timely manner after the case was dismissed. The trial court ultimately determined that there was no good cause to reinstate the action because of what it saw as unreasonable delay and entered an order to that effect.

### III. DOCKET NO. 220586

On February 19, 1999, the same day the trial court refused to reinstate the original action or compel arbitration, Wickings instituted a new action, alleging the same negligence and breach of warranty claims. This time, Arctic moved relatively rapidly by moving

for summary disposition on April 7, 1999. In the motion, Arctic argued that the statute of limitations barred the action because it would have elapsed on December 1, 1992, except that Wickings had filed his original complaint the previous day, tolling the period of limitations until June 13, 1997, when it resumed for one day before lapsing. Thus, the February 19, 1999, complaint was more than twenty months late. Wickings responded by arguing that Arctic had agreed to waive the statute of limitations defense and submitted as documentary evidence all the attorneys' letters except the one from Miller. The parties submitted conflicting affidavits in support of their respective arguments. Wickings submitted Feldman's affidavit summarizing the alleged agreement between the parties along with the relevant correspondence. Arctic submitted an affidavit from Marcia Hull, in-house counsel to Minstar, its new corporate name, alleging that Arctic never knew about Wickings' claims or assented to be bound by any agreement. Plaintiff's counsel failed to appear at the hearing on the motion for summary disposition on June 18, 1999. As a result, the trial court, which noted that it had read the briefs and record, merely stated, "I don't find a sufficient waiver." The resulting order does not explain the trial court's reasoning, merely referring to the reasons articulated during oral arguments.

### IV. APPELLATE JURISDICTION

#### A. STANDARD OF REVIEW

Arctic first claims that this Court lacks jurisdiction to hear this appeal.[1] Whether a party's claim of appeal

---

[1] Case law in effect before the 1996 amendment of MCR 7.202(8)(a)(1) recognized an appeal as of right from an order denying a motion to rein-

is timely affects this Court's jurisdiction according to MCR 7.204(A) and is, therefore, reviewed de novo.[2] Furthermore, construing and applying a court rule presents a legal issue subject to review de novo.[3]

## B. FINAL ORDERS

Arctic contends that *Allied Electric Supply Co, Inc v Tenaglia*[4] proves that the dismissal order, not the order denying Wickings' motion to reinstate the original court action, was the final order appealable as of right under MCR 7.202(8)(a)(i) (redesignated as MCR 7.202[7][a][i] effective September 1, 1999, 459 Mich ccv.). Further, it asserts, the claim of appeal in this case is unquestionably untimely because it occurred more than twenty-one days after entry of the order dismissing the case without prejudice.[5] Therefore, Arctic concludes, Wickings does not have an appeal as of right. We do not agree.

*Allied Electric* did not address a claim of appeal from a motion to reinstate an action dismissed without prejudice for failure to progress pursuant to MCR 2.502(C). Rather, *Allied Electric* considered whether a party could claim an appeal more than twenty-one days after a trial court denied a motion to set aside a default judgment pursuant to MCR 2.603(D)(1).[6] The Supreme Court summarized the time frame the court

---

state an action. See, e.g., *Kelley v Frank D McKay Realty Co*, 34 Mich App 370, 372; 191 NW2d 123 (1971).

[2] *Smith v Union Charter Twp (On Rehearing)*, 227 Mich App 358, 359, n 1; 575 NW2d 290 (1998).

[3] *In re Gosnell*, 234 Mich App 326, 333; 594 NW2d 90 (1999).

[4] *Allied Electric Supply Co, Inc v Tenaglia*, 461 Mich 285; 602 NW2d 572 (1999).

[5] See MCR 7.204(A)(1).

[6] *Id.* at 286-287.

rules establish for appeals as of right to this Court from postjudgment motions following 1996 amendments:

The Court of Appeals has jurisdiction of an appeal of right from a "final judgment" or a "final order." MCR 7.203(A)(1). These, in turn, are defined as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order . . . ." MCR 7.202(8)(a)(i). Thus the default judgment in this case was the final judgment, and the motion to set it aside was a timely postjudgment motion that deferred the appeal period under MCR 7.204(A)(1)(b).

The definition of a final judgment or a final order found in MCR 7.202(8)(a)(i) took effect January 1, 1996. The definition supersedes prior case law, which had indicated that a denial of a motion to set aside a default judgment is appealable by right. *General Electric Credit Corp v Northcoast Marine, Inc*, 402 Mich 297; 262 NW2d 660 (1978). Because an order denying a motion to set aside a default judgment is no longer deemed a final judgment, a motion for reconsideration that is filed more than twenty-one days after the final judgment does not extend the time for taking an appeal of right. Thus, the cases on which the defendants rely are likewise superseded by the amendment of the court rule, and overruled by our decision today. *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 4-7; 497 NW2d 514 (1993); *Gavulic v Boyer*, 195 Mich App 20, 23-24; 489 NW2d 124 (1992). We caution practitioners to be aware of the effect that the court rule has in this situation. After entry of a default judgment, a party needs to file a motion to set aside within twenty-one days (or get an extension within that period) in order later to be able to take an appeal of right from an adverse decision on the motion. And, as illustrated in this case, a motion for reconsideration of an order denying a motion to set aside will not extend the time further unless that motion is filed within the same initial twenty-one day period (or within a further period

granted by the court within the initial twenty-one day period).[7]

Critically, the order dismissing the case without prejudice was not a "final" judgment or order because it did not dispose of all of Wickings' claims *and* it did not adjudicate the claims.[8] Although the Supreme Court decided *North v Dep't of Mental Health*[9] during a transition from the 1963 general court rules to the modern 1985 court rules, it nevertheless stated quite plainly that, "[a]n administrative decision to dismiss a case for lack of progress does not operate as an adjudication on the merits." That Supreme Court opinion effectively overruled previous inconsistent statements from this Court that dismissal for failing to make progress was an adjudication on the merits.[10]

Interpreting dismissal under MCR 2.502 as something less than a final order or judgment is consistent with the court rules, which expressly anticipate that this sort of dismissal may lead to further substantive proceedings on the claims. Not only do the court rules permit dismissal without prejudice as the "default" posture for dismissal under MCR 2.502(B)(1), they also allow reinstatement under MCR 2.502(C). Not until the trial court denied the motion to reinstate the action did the parties have any firm indication that the case had finally concluded.

This sort of procedural limbo distinguishes this case from the default judgment addressed in *Allied*

---

[7] *Id.* at 288-289.

[8] MCR 7.202(8)(a)(i) (now MCR 7.202[7][a][i]).

[9] *North v Dep't of Mental Health*, 427 Mich 659, 661; 397 NW2d 793 (1986).

[10] See, e.g., *Green v Wayne Soap Co*, 33 Mich App 74; 189 NW2d 729 (1971).

*Electric.* Here, the case was dismissed without prejudice under MCR 2.502, which does not appear on a trial court's docket and has not resulted in a judgment or adjudication of any kind, but is not barred from being resurrected on that docket at some future date. A default resolves the parties' liabilities and the resulting default judgment fixes damages.[11] That the order awarding damages following a default is called a default *judgment* is no coincidence. In effect, a default judgment affords a party the same sort of final resolution to a case that a judgment after trying its merits would have provided. Accordingly, when a trial court denies a motion to set aside a default judgment and a litigant moves for rehearing of that decision, the trial court is dealing with a case that has already been substantively resolved. It makes sense, then, to treat a motion to set aside a default judgment as a routine postjudgment motion and to calculate the time for an appeal from the final judgment, the default judgment itself, as the Supreme Court did in *Allied Electric.*

In contrast, a court that must decide to grant or deny a motion to reinstate an action previously dismissed without prejudice for lack of progress has no basis from which to conclude that the case has been adjudicated or otherwise resolved before it entered the dismissal order. Despite any legitimate suspicions about the parties' liabilities and the true extent of damages, a trial court considering a motion to reinstate lacks the tangible evidence of a resolution of the liability and damages issues that a written default and default judgment provide. Thus, a trial court's per-

---

[11] See *Perry v Perry*, 176 Mich App 762, 767; 440 NW2d 93 (1989).

spective on the substantive issues in a case is vastly different when addressing a motion to reinstate than when it entertains a motion to set aside a default judgment.

Moreover, the court rules treat time matters relating to motions to set aside default judgments and motions to reinstate an action differently. Unlike a motion to set aside a default judgment pursuant to MCR 2.603(D)(2), a motion to reinstate an action under MCR 2.502(C) does not set an explicit time limit. Further, MCR 2.502 does not require a party moving to reinstate an action to follow the rule governing postjudgment motions, MCR 2.612, while a motion to set aside a default judgment pursuant to MCR 2.603(D)(3) must follow the postjudgment motion rule.

In sum, there are substantive distinctions between cases dismissed for lack of progress and cases in which the trial court entered a default judgment. The court rules also impose different time limits when parties attempt to circumvent this type of dismissal and judgment. These are good reasons to treat a trial court's order on a motion to reinstate an action differently from a trial court's postjudgment order regarding a default judgment. Therefore, *Allied Electric* does not require this Court to treat a motion to reinstate an action like a postjudgment motion.

The time in which Wickings had to file his claim of appeal commenced following the trial court's February 19, 1999, order because it was the final order in this case, effectively dismissing the case with prejudice. The claim of appeal, filed on March 11, 1999, did not exceed the twenty-one-day period pre-

scribed in MCR 7.204(A)(1) and, thus, does not deprive this Court of jurisdiction to decide this case.

### V. MOTION TO REINSTATE THE FIRST ACTION

#### A. STANDARD OF REVIEW

Wickings first contends that the trial court erred in denying his motion to reinstate the action.[12] This Court reviews for abuse of discretion a trial court's decision concerning a motion to reinstate an action.[13]

#### B. MCR 2.502

MCR 2.502(A)(1) permits a trial court to notify the parties that, after ninety-one days, it intends to dismiss the case for the parties' failure to make progress. Following this ninety-one-day period, the trial court may dismiss the action with or without prejudice; however, unless explicitly stated, dismissal under this court rule is without prejudice.[14] MCR 2.502(C) defines a party's recourse from such an order dismissing an action for lack of progress, stating, "On motion for good cause, the court may reinstate an action dismissed for lack of progress on terms the court deems just. On reinstating an action, the court shall enter orders to facilitate the prompt and just disposition of the action." Unlike MCR 2.612(C)(2), which imposes a one-year or "reason-

---

[12] Although, technically, the motion was drafted alternatively to reinstate the action or to compel arbitration, we treated it solely as a motion to reinstate the action. At the time Wickings brought the motion, there was no case pending in the trial court. If the trial court did not reinstate the action, then it would not have had jurisdiction over a case and, therefore, could not have entered an order compelling arbitration.

[13] See *Bolster v Monroe Co Bd of Rd Comm'rs,* 192 Mich App 394, 399; 482 NW2d 184 (1991).

[14] MCR 2.502(B)(1).

able" time limit on motions for relief from judgment, MCR 2.502 does not prescribe a time limit for moving to reinstate an action.

In practice, the plain language of MCR 2.502(C) requires that a party petitioning to reinstate an action show "good cause."[15] The scant case law addressing reinstatement under this court rule does not formally define a test for determining when good cause to reinstate an action exists. These few cases do, however, identify factors relevant to deciding whether to reinstate an action under the circumstances of the individual cases decided.

For instance, *Gerbig v White Motor Credit Corp*[16] specifically addressed the possibility that the lack of progress was attributable to an alleged stay on the case being dismissed because of a concurrently pending action. Although this Court held that the action had not been stayed, the opinion, read broadly, suggested that if dismissal for lack of progress was inappropriate for technical or procedural reasons, then that party might be entitled to have the action reinstated.

In *Bolster v Monroe Co Bd of Rd Comm'rs*,[17] this Court identified the delay between the order dismissing the case and the motion to reinstate it as a relevant consideration. *Bolster* implicitly recognized that parties unable to demonstrate that they made progress after dismissal will be unlikely to make progress if a case is reinstated, making reinstatement futile. Accordingly, a party's conduct after the case is

---

[15] See *Bolster, supra* at 399.

[16] *Gerbig v White Motor Credit Corp*, 165 Mich App 372, 375; 418 NW2d 468 (1987).

[17] *Bolster, supra* at 400.

dismissed without prejudice under this court rule, especially evidence of diligence in filing the motion to reinstate, is relevant to the decision to reinstate the action.

There are a number of cases that discuss reinstatement under older court rules. These former court rules, such as GCR 1963, 501.3, were not identical to MCR 2.502. However, they are persuasive in the absence of other case law explicitly identifying appropriate factors a trial court must consider when exercising its discretion to grant or deny a motion for reinstatement under MCR 2.502.

For example, the trial court in *Denham v Univ of Michigan*[18] addressed reinstatement in the context of a motion for rehearing of the original decision to dismiss the case.[19] The trial court ruled that reinstatement was inappropriate because the plaintiff asking

---

[18] *Denham v Univ of Michigan*, 151 Mich App 77; 390 NW2d 204 (1986).

[19] *Denham* actually says:

Plaintiff's case was originally dismissed because plaintiff failed to appear at the time of the general "no progress" call. However, upon rehearing, plaintiff's case was dismissed because the Court of Claims judge found that plaintiff had failed to show that the lack of progress in the case was not due to fault or lack of due diligence on her part. [*Id.* at 80].

Certainly, it is debatable whether the trial court's decision in *Denham* was equivalent to denying a motion for reinstatement. After all, the appellate decision does not make clear whether the court entered an order dismissing the action when the plaintiff failed to appear at the no-progress call. Nevertheless, the logic applied in *Denham* appears to apply equally well in the reinstatement context. Furthermore, this Court, in *Bolster, supra* at 399-400, discussed the details of the plaintiffs' failure to make any progress on the case for eleven years in order to reach the conclusion that the trial court had not, in fact, abused its discretion in denying the motion to reinstate the case. In other words, *Bolster* considered the facts justifying dismissal for failure to make progress relevant when determining whether the trial court properly exercised its discretion to deny reinstatement.

to reinstate the case had failed to demonstrate (1) that the lack of progress was not her fault and (2) that she had acted diligently while the action was pending.[20] On appeal, the *Denham* Court reversed the decision of the trial court because the trial court had erred in dismissing the action for lack of progress, but the *Denham* Court did not explicitly criticize the criteria the trial court applied to the issue on rehearing.[21]

Similarly, in *Eliason Corp, Inc v Dep't of Labor,*[22] this Court commented that the trial court in that case did not abuse its discretion in denying the motion to reinstate the action because the plaintiff failed "to present any additional justification for its lack of reasonable diligence" during the time leading up to the dismissal.[23] Therefore, a moving party's conduct or other facts leading to dismissal may also be relevant when a trial court rules on a motion to reinstate an action.

As in *Gerbig, supra,* a number of older cases confirm that technical defects in the dismissal, such as the court's failure to notify the parties of the potential for dismissal, are sufficient grounds to reinstate an action.[24] If the trial court erroneously believes that the parties failed to make progress when, in fact, the court itself failed to prescribe the progress it desired

---

[20] *Denham, supra* at 80.

[21] *Id.* at 81-82.

[22] *Eliason Corp, Inc v Dep't of Labor,* 133 Mich App 200, 206; 348 NW2d 315 (1984).

[23] See also *Hanosh v Nick,* 28 Mich App 383, 385-386; 184 NW2d 570 (1971).

[24] See *Laidler v Nat'l Bank of Detroit,* 133 Mich App 85, 92-93; 348 NW2d 42 (1984); *Belt v Davis & Randall, Inc,* 62 Mich App 315, 319; 233 NW2d 268 (1975).

to see, then the parties have good cause to reinstate the action.[25]

*Flack v Waite*[26] also recognized prejudice as a relevant factor. Although MCR 2.502 does not mention prejudice to the party opposing reinstatement, because the trial court has wide discretion in this area, we do not think it improper for the court to consider prejudice while determining if there is good cause to reinstate an action. This Court's opinion in *Heins v Sutphin*[27] brought a number of these concepts together, focusing on whether there was cause to dismiss the case for lack of progress, appropriate notice of the dismissal, and prejudice to the nonmovant.

Taken as a whole, these cases suggest that one or more of the following factors may be relevant to determining good cause to reinstate an action: (1) procedural or technical error in dismissing the case for lack of progress, (2) the movant's actual diligence before dismissal, (3) justification for the movant's failure to make progress before dismissal, (4) the movant's diligence in attempting to settle the case or a prompt motion to reinstate it following dismissal, and (5) potential prejudice to the nonmovant if the action is reinstated.[28]

---

[25] See *Nestell v Bridgeport-Spaulding Community Schools Bd of Ed*, 138 Mich App 401, 405; 360 NW2d 200 (1984).

[26] *Flack v Waite*, 18 Mich App 339, 340; 170 NW2d 922 (1969).

[27] *Heins v Sutphin*, 76 Mich App 562, 564-565; 257 NW2d 169 (1977).

[28] We do not intend for the list of factors identified in this opinion as relevant to a motion to reinstate an action to be exhaustive. Nor do we intend to suggest that these factors would be relevant in *every* case.

### C. APPLICATION TO THIS CASE

In this case, the trial court emphasized factors that weighed both for and against reinstating the case. The trial court noted that the parties' attorneys were "faithful" while pursuing the case before dismissal. This suggests that the trial court believed that the parties acted diligently before the dismissal, despite a failure to make progress. Indeed, the record suggests that at least Wickings was making efforts to comply with the court's scheduling order and move toward trial.

The trial court, however, immediately followed this comment by questioning what effect any agreement the parties had to reinstate the case would have on the order dismissing the case. To a limited extent, and when viewed with only a quick glance, this line of reasoning indicated that the trial court erroneously believed that dismissal under MCR 2.502 in this case was with prejudice. Quite clearly, MCR 2.502(B) makes all dismissals without prejudice unless the trial court specifically says that it is with prejudice. In any event, the trial court's order in this case specified that dismissal was without prejudice.

The trial court's question could also be viewed as an erroneous conclusion that the parties' postdismissal conduct, including any agreement intended to resolve the dispute expediently was irrelevant when deciding a motion to reinstate. Had the trial court stopped there, it would be possible to conclude that it abused its discretion by denying the motion because MCR 2.502(C) explicitly permits reinstatement and, therefore, it was logical for diligent attorneys to continue to pursue a settlement or judicial resolution to

the case. In other words, even if the parties were somewhat culpable for not approaching the trial court to make it aware of their ongoing efforts to resolve the case, reinstatement would have been appropriate if the parties were able to demonstrate new progress after the dismissal order. In effect, had the parties shown that they were diligent while the case was pending and would be in the future, then *Eliason Corp, supra*, would have permitted reinstatement, making erroneous the trial court's apparent conclusion that their postdismissal conduct was irrelevant.

But the trial court did not stop its analysis after questioning the effect the parties' conduct had on the dismissal order. Rather, the trial court stated that its true concern was that Wickings waited more than a year after his attorneys procured the alleged agreement to reinstate the action before filing a motion to that effect. As the trial court properly noted, it had no way of knowing that the parties were continuing to pursue the case because they failed to communicate with the court.[29] This subsequent lack of diligence by the parties was, evidently, a great concern to the trial court in light of their original failure to proceed toward trial or settlement. *Denham, supra*, endorses evidence of diligence as a criterion relevant to a motion to reinstate, while *Bolster, supra*, clearly considers the amount of time a party waited before filing the motion as relevant to this decision. There simply is no explanation in the record, much less one signifying "good cause," to explain the delay in filing the motion to reinstate the action. The last exchange of

---

[29] See generally *Bell v Fuksa*, 159 Mich App 649, 655; 406 NW2d 900 (1987).

substantive letters between counsel occurred in September 1997 and Wickings' attorneys did not rekindle their interest in the case until April 1998. Seven additional months then elapsed before the next letter in November 1998. Then there were the final two months before Wickings filed this motion in January 1999. The trial court's concern in this case went far beyond attempting to make its docket move at more than a "glacial pace." The factors it articulated directly questioned the good cause for reinstatement in this case and provided a proper reason for denying the motion.

Had the trial court wanted to exercise its discretion to reinstate the action, it could have done so because of a variety of factors. Some of the problems preceding dismissal were, evidently, attributable more to Arctic than to Wickings. For example, Wickings had trouble convincing Arctic to answer interrogatories. Likewise, the letters between counsel show that Wickings' attorney was diligent after dismissal, both in continuing settlement negotiations with opposing counsel and in following up on opposing counsel's promises to reach an agreement.

Nevertheless, the trial court does have truly wide discretion in this area.[30] Communicating with the trial court is very important, but Wickings did not communicate with the trial court for almost two years, from the second pretrial hearing in April 1997 until the January 1999 motion.[31] Furthermore, the last fourteen months of the delay before filing the motion to reinstate can be attributed to Wickings. Filing the motion

---

[30] See *Hoad v Macomb Circuit Judge*, 298 Mich 462, 469; 299 NW 146 (1941).

[31] See generally *Bell, supra* at 655.

was Wickings' responsibility in this case because it was in his interest and it should have been apparent that Dresbach's continuing failure to either draft the arbitration agreement or return opposing counsel's telephone calls made settlement unlikely. There was no apparently good reason to wait more than a year after October 1997, the time at which the parties anticipated settling the case, to file the motion. In light of these other factors, it is impossible to say that the trial court abused its discretion when the trial court exercised its discretion by looking at the whole record, including at least one significant factor favoring reinstatement: the parties' written agreement.

### VI. SUMMARY DISPOSITION

#### A. STANDARD OF REVIEW

Wickings claims that the trial court erred in granting summary disposition under MCR 2.116(C)(7) because Arctic waived its right to assert the statute of limitations as a defense in this case. This Court reviews de novo an order granting or denying summary disposition under MCR 2.116(C)(7).[32] The Court applies the same review de novo to a decision to grant or deny summary disposition under MCR 2.116(C)(10).[33]

#### B. FRAMING THE ISSUE ON APPEAL

There is an inherent problem in viewing this issue through the lens of a motion for summary disposition

---

[32] *Jacobson v Parda Federal Credit Union*, 457 Mich 318, 324; 577 NW2d 881 (1998).

[33] *Professional Rehabilitation Associates v State Farm Mut Automobile Ins Co*, 228 Mich App 167, 170; 577 NW2d 909 (1998).

pursuant to MCR 2.116(C)(7). This issue does not revolve around answering questions of law, such as which statute of limitations applied, whether it was tolled, or when the limitation period ended. In fact, neither party disputes that the applicable period of limitation had elapsed by the time Wickings filed this second suit on February 19, 1999. MCL 600.5805(9); MSA 27A.5805(9) establishes that the period of limitation is three years in products liability cases. The injury in this case occurred in December 1992. Thus, almost seven years had passed between when Wickings sustained his alleged injury and the time he filed the second lawsuit.

Instead, this issue revolves around a factual matter: whether Arctic, through its attorneys, agreed to waive the statute of limitations as an affirmative defense. MCR 2.116(C)(10) is the proper court rule for determining whether, as a matter of law, the facts in a case are so settled that they do not require a trial. Read carefully in context, the trial court's brief statement that there was insufficient evidence of waiver in this case reveals that it, too, believed that this is a factual question, even if it did not expressly recognize the misfit between the court rule and its decision.

There is no barrier to reviewing this issue under MCR 2.116(C)(10). "An order granting summary disposition under the wrong court rule may be reviewed under the correct rule."[34] Accordingly, the following analysis adheres to case law interpreting and applying MCR 2.116(C)(10).

---

[34] *Shirilla v Detroit*, 208 Mich App 434, 437; 528 NW2d 763 (1995).

C. THE SCOPE OF THE PARTIES "AGREEMENT" TO WAIVE THE
STATUTE OF LIMITATIONS

In *Village of Dimondale v Grable*,[35] this Court recently explained the legal standard that applies to a motion for summary disposition pursuant to MCR 2.116(C)(10):

> Under MCR 2.116(C)(10), summary disposition may be granted if there "is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10). A court must consider the pleadings as well as affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). However, the nonmoving party must produce evidence showing a material dispute of fact left for trial in order to survive a motion for summary disposition under this court rule. MCR 2.116(G)(4); *Etter v Michigan Bell Telephone Co*, 179 Mich App 551, 555; 446 NW2d 500 (1989).

Although the parties' arguments are interesting, only one is dispositive of this case.

Arctic claims that, even if the parties agreed to waive the statute of limitations as a defense, they did so only concerning the original action, not a subsequent action. Dresbach's September 1997 letter supports this conclusion. Nothing in the letter suggests that the parties were contemplating a separate action in the future. Rather, they expected to settle the case within the month and arbitration, subject to a written agreement Dresbach evidently did not circulate as promised, was the first alternative to settlement. Only

---

[35] *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000).

if there was some "unforeseen reason" that the parties failed to settle or arbitrate the matter did the parties intend to stipulate to reinstate the action without the statute of limitations as a defense. Critically, Dresbach's letter refers to "the Circuit Court action."[36] Note that this language is in the singular, most logically referring to the one and only action that could be reinstated, the action that had been dismissed without prejudice. Not only does it appear that the parties did not think a second lawsuit would materialize because of the progress in their negotiations, but, by linking waiver of the statute of limitations defense with reinstatement, they limited the waiver to that first action. Furthermore, there is no documentary evidence in the trial court record indicating that the letter failed to describe all the terms of the parties' agreement. Wickings even relies on this one letter as evidence of the agreement. Thus, there is no reason to conclude that the parties agreed on terms affecting the statute of limitations for this injury other than the ones identified in Dresbach's letter.

There simply is no evidence in the lower court record suggesting that there was an agreement to waive the statute of limitations defense in any case other than the one the trial court originally dismissed. With no question of material fact concerning whether there was an agreement to waive the statute of limitations defense in *this case* in the record, Arctic was entitled to judgment as a matter of law because the statute of limitations indisputably barred the action. Therefore, the trial court properly granted summary

---

[36] Although Miller's April 1998 letter also referred to "the Circuit Court action," it was not submitted with the materials in response to the motion for summary disposition in this case. Therefore, we do not consider it.

disposition. That the trial court granted summary disposition under MCR 2.116(C)(7) rather than under subsection C(10) makes no difference. This Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons.[37]

## VII. CIVILITY, HONOR, AND A TRUSTWORTHY CHARACTER

We would be remiss if we failed to comment on the underlying problem in this case, which was a breakdown in the working relationship between the parties' attorneys. With battle metaphors used so frequently to describe the atmosphere surrounding litigation, it is easy to forget that cooperation, negotiation, and compromise are skills good lawyers use with regularity. Likewise, in a society where there seem to be no limits to the lengths to which lawyers will go to secure a "win" for their clients, it is easy to ignore that civility, honor, and a trustworthy character are indispensable qualities in lawyers. Combined, these skills and qualities help lawyers transcend their merely functional value as sources of legal information so that they may serve their clients' best interests as true advocates and counselors while upholding their special obligations as members of the bar and officers of the court.

For a time in this case, it appeared that the attorneys were working diligently *with* each other to find a solution to the parties' legal dispute and the trial court's decision to dismiss the case without prejudice. Although we wish the parties had moved more

---

[37] See *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).

quickly to this point, so that they could have avoided dismissal altogether, we still laud these efforts.

Nevertheless, the breakdown in the parties' dealings through their attorneys was so abrupt and complete, after they had already agreed how they would resolve the case, that it is almost unfathomable. While Arctic's new attorneys may have discovered a meritorious defense, nothing forced them to renounce their previous negotiations with Wickings' attorneys or precluded them from seeking a mutually acceptable resolution to this case, even if that resolution occurred outside the courts. It is absolutely clear that the parties agreed to a course of action intended to settle their differences and rendered that agreement in writing. While we are not at liberty to enforce that agreement in this appeal, we see no logical reason to encourage parties and their attorneys to renege on obligations that they assume voluntarily.

The lapse in the attorneys' good judgment in this case resulted in catastrophe for Wickings, who ultimately lost his cause of action. The shocking aspect of the case is that the problem could have been solved if the attorneys had even called each other to check on the progress of the case sometime between April and November 1998 to follow up on the arbitration agreement Dresbach promised. With such contact and communication, the parties either could have formulated the arbitration agreement or Wickings could have moved for reinstatement without excessive delay. As Judge FITZGERALD pointed out in his concurrence in *Medbury v Walsh*,[38] sometimes the solution to a complicated legal problem is rather simple.

---

[38] *Medbury v Walsh*, 190 Mich App 554, 557; 476 NW2d 470 (1991).

Perhaps the parties and their attorneys will still be able to fulfill the spirit of their agreement by working out their differences voluntarily. In any event, we cannot formulate a plausible reason why the attorneys in this case allowed this matter to founder, and we sincerely hope that it does not happen again.

Affirmed in both cases.