LANGEL *v.* BOSCAGLIA.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

   The Supreme Court accepts plaintiffs' testimony as true and in the light most favorable to them on appeal from judgment for defendant on his motion for directed verdict.

2. PRINCIPAL AND AGENT—HOUSE CONSTRUCTION CONTRACT—AGENCY OF SON—EVIDENCE.

   Proof of agency of son of defendant for him *held*, sufficient to present a question for jury in action to recover loss due to defective construction of a house.

3. SAME—APPARENT AUTHORITY—EVIDENCE—ESTOPPEL.

   Evidence showing that defendant was listed in the telephone directory as "Albert Boscaglia & Sons," that his son was found at the job where defendant was working as well as at his home and place of business was not, standing alone, sufficient to create an estoppel but was some indication of apparent authority and of evidentiary value when combined with other circumstances in the case.

4. SAME—ADOPTION OF UNAUTHORIZED ACTS OF ANOTHER—RATIFICATION—ESTOPPEL.

   A party who adopts the unauthorized acts of another and receives and accepts the benefits accruing therefrom, thereby adopts and ratifies the instrumentalities by which the results were obtained and is estopped from denying that the agent was authorized to act.

5. SAME—ACCEPTANCE OF BENEFITS UNDER CONTRACT NEGOTIATED WITH PRINCIPAL'S SON—PRIMA FACIE EVIDENCE.

   Acceptance of check drawn in favor of defendant in his business name, as listed in telephone directory, and its indorse-

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error, § 886.
[3] 2 Am Jur, Agency, §§ 102, 104.
[4–7] 2 Am Jur, Agency, §§ 227, 229.

ment by him constituted him prima facie the recipient of the benefits under contract negotiated with plaintiff by defendant's son.

6. Same—Acceptance of Benefit—Ratification—Knowledge of Material Facts.

The acceptance of the benefit of a contract constitutes ratification of the act of one assuming to act as his agent, where it is coupled with a knowledge of the material facts on which such conduct was based.

7. Same—Burden of Proof—Acceptance of Benefits—Directed Verdict.

Plaintiff lot owners met their burden of proof of agency by showing that defendant's son acted for him in contracting to build a house for them and that defendant accepted the benefits of the contract with knowledge that his son had made the contract in defendant's name, hence directed verdict for defendant on ground there was no direct evidence that the defendant had ever been told that his son had made the contract for defendant was error.

Appeal from Macomb; Spier (James E.), J. Submitted April 5, 1951. (Docket No. 36, Calendar No. 44,975.) Decided June 4, 1951.

Action by John Langel and wife against Albert Boscaglia, doing business as Albert Boscaglia & Sons, to recover money paid in building house. Directed verdict and judgment for defendant. Plaintiffs appeal. Reversed and remanded for new trial.

*Frank J. Sheets,* for plaintiffs.

*Frank E. Jeannette (George R. Deneweth, Jr.,* of counsel), for defendant.

Butzel, J. John and Lillian Langel, plaintiffs, desirous of having a home built on their lot in Macomb county, consulted several Detroit builders who all refused to build the home because of the distance from Detroit, and the lack of utilities at the building

site. In the course of their inquiry plaintiffs were referred to Albert Boscaglia, defendant, a contractor listed in the telephone directory as Albert Boscaglia & Sons and who lived not too far from plaintiffs' lot. Plaintiffs called at Albert's home in November of 1947, and were told that they could find Albert at a house he was constructing. Upon going there, they met Marino Boscaglio, Albert's son. The record indicates that Marino may have been a minor at that time. They asked for Albert and were told by Marino that he was the son and that he would handle the business. After a discussion of the price of a home for which Langel had obtained plans, the Langels departed, intending to return when they had sold the house in which they then resided. In February of 1948, the Langels again went to Albert's home and asked for him. Marino told them that his father was in Italy, and that it was not certain when he would return, but that he would start the house and do the work until his father returned. It was agreed that the house would be built although the contract was never reduced to writing. Langel paid Marino $7,000 cash on February 12th and Marino began the house 2 days later. Albert Boscaglia returned from Italy about 3 weeks after the house had been started. At that time the walls were about half up, but there was very little other work done.

The record indicates that Albert Boscaglia was a cement contractor, but the plaintiffs did not know this until the first trial, and acted under the impression that Albert was a builder. Albert did nothing to dispel this impression. After Albert returned, Marino spent very little time at the job site, evidently allowing Albert to supervise the work. On several occasions Albert Boscaglia and John Langel discussed the progress of the work. When Langel complained of defects in the construction Albert assured him that the brick would be cleaned, sufficient

fill dirt would be used to properly grade the premises, and certain errors would be corrected. Albert told Langel that they had built 25 homes like this one, and that there was no need to worry. On one occasion an electrical contractor told Langel that he had not been paid, and Langel spoke to Albert about it. Albert said that he had paid the contractor. However, it was Marino who hired and paid the subcontractors and who arranged for the purchase of supplies and fixtures. Langel never told Boscaglia that his son had represented that he was working for his father.

On completion of the house the plaintiffs mortgaged it to the Frazer State Bank for $3,900 upon receipt of a sworn statement not shown by the record as having been introduced in evidence. The bank issued a check to Albert Boscaglia & Sons as payee for the amount of the mortgage. The check was indorsed by both Albert and Marino Boscaglia and cashed. The record does not show what became of the money.

When the house was completed there were such serious defects therein that the building inspector would not allow the Langels to occupy it. The plaintiffs claim that the house is uninhabitable and that they were still unable to occupy it at the time of the trial as they lacked sufficient funds to make necessary corrections. Plaintiffs brought this action against Albert Boscaglia to recover their total loss because of the defective construction. Marino Boscaglia was not joined as a defendant. The declaration is not in the record. At the first trial the jury was unable to agree upon a verdict. At the second trial, at the conclusion of the plaintiffs' proofs, the defendant moved for a directed verdict and after argument the motion was granted.

In the absence of evidence to the contrary we must accept the plaintiffs' testimony as true and in the

light most favorable to them. With this in mind we hold that plaintiffs have shown sufficient proof of agency to present a question for the jury.

It is true that the plaintiffs had never seen, or spoken to Albert Boscaglia at the time this contract was made and relied almost entirely on the statements of the son when they entered into the contract. However, Albert was listed in the telephone directory as Albert Boscaglia & Sons; Marino was found at the job where Albert was working and at Albert's home, his place of business. Although these facts may be some indication of apparent authority, we conclude that standing by themselves they are insufficient to create an estoppel. However, they are of evidentiary value when combined with the other circumstances in the case.

"It is a proposition of law too fundamental and too well established to require a citation of authorities that, if a party adopts even unauthorized acts of another, and has received and accepted benefits accruing therefrom, he thereby adopts and ratifies the instrumentalities by which the results were obtained, and is estopped from denying that the agent was authorized to act." *Bertha* v. *Regal Motor Car Co.,* 180 Mich 51, 57 (8 NCCA 460).

Albert accepted the check and indorsed it. What became of the funds was not a matter of further proof for the plaintiffs, for prima facie Albert was the recipient of the benefits.

The acceptance of the benefit of a contract may not be sufficient of itself to establish a ratification of the contract however.

"It is well settled that a person may impliedly ratify the act of one assuming to act as his agent by conduct which on his part constitutes an assent to the acts in question. But a knowledge of the material facts on which such conduct was based must be brought home to him." *David Stott Flour Mills* v.

*Saginaw County Farm Bureau,* 237 Mich 657, 663, and authorities therein cited.

Seemingly this was the basis for the trial court's decision for it was not shown by direct evidence that Albert was ever told that his son had made a contract for him. However, the circumstances indicate that Albert knew his son had made a contract in his name, and from Albert's actions it seems probable that the son's representations were true and that the son was acting for his father. Albert had promised to correct errors in the construction that had nothing to do with the cement work. He told Langel that he had paid the electrician. He assured him that they knew their business for they had built 25 homes similar to the one they were building. The final payment was made by a check payable to him. This would indicate that his authority was wider than that of a subcontractor.

We must conclude from the facts that the plaintiffs met the burden of proof and that the order of proof had shifted to the defendant. As the case now stands the plaintiffs' evidence is uncontradicted, and "while the case was a close one on its facts, there was sufficient evidence to carry the case to the jury upon all of the essential elements." *Beasore* v. *Stevens,* 155 Mich 403, 406. The *Beasore Case, supra,* is somewhat similar to the instant case and we decided there that a jury question was presented.

The judgment of the trial court is reversed and the case remanded for a new trial. Costs to appellants.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.