ECHELON HOMES, LLC v CARTER LUMBER COMPANY

Docket No. 243112, 243180. Submitted January 6, 2004, at Detroit. Decided March 30, 2004, at 9:10 A.M. Leave to appeal sought.

Echelon Homes, L.L.C., brought an action in the Oakland Circuit Court against Carter Lumber Company, alleging that Carter aided and abetted Carmella Wood, a former Echelon employee, in the conversion of Echelon's assets by knowingly or recklessly allowing Wood to open and use a charge account at Carter in the name of Echelon, aided and abetted Wood's breach of her fiduciary duties to Echelon, converted Echelon's assets and property to its own use, and committed fraud by sending Echelon invoices for goods and services that were not provided to Echelon. Carter filed a counterclaim, alleging the existence of an account stated, and seeking that amount. The court, Gene Schnelz, J., granted summary disposition in favor of Carter with regard to Echelon's complaint, denied Carter's motion for summary disposition with regard to its counterclaim, and granted summary disposition in favor of Echelon with regard to the counterclaim. Carter appealed from the order regarding the counterclaim (Docket No. 243112). Echelon appealed from the order regarding its complaint (Docket No. 243180). The appeals were consolidated.

The Court of Appeals *held*:

1. Wood did not have apparent authority to open a credit account with Carter in Echelon's name. No binding agreement exists between Echelon and Carter. There is no account stated because Echelon never assented to the creation of the account. The agreements Wood entered into with Carter were not ratified by Echelon. Echelon did not admit liability to Carter.

2. A finding that Wood acted with apparent authority is a prerequisite to a finding that an account stated was created. Carter's affidavits do not create a genuine issue of material fact concerning the scope of the agency relationship between Wood and Echelon. The court properly granted summary disposition in favor of Echelon with regard to Carter's counterclaim. That part of the court's order must be affirmed.

3. Echelon cannot sustain a common-law claim of aiding and abetting conversion against Carter. Here, there was no underlying

conversion. Echelon does not have standing to file a conversion claim against Wood with regard to the checks that were issued to Carter by American Title Company in Echelon's behalf. The checks constitute Carter's personal property and do not belong to Echelon. Echelon cannot bring an action against Carter for aiding and abetting the conversion of the checks. A similar result is applicable to an assertion that Wood converted the funds in Echelon's account with American Title. Wood is not obligated to return the specific or identical moneys taken from Echelon's account with American Title. A claim of aiding and abetting such conversion against Carter must fail. The part of the order granting Carter's motion for summary disposition with regard to Echelon's common-law conversion claim must be affirmed.

4. Sufficient circumstantial evidence exists to create a question of fact regarding whether Carter had constructive knowledge that Wood was paying Carter with embezzled funds. The trial court erred in dismissing Echelon's claim of statutory conversion under MCL 600.2919a. This part of the court's order must be reversed and the matter must be remanded to the trial court for further proceedings.

5. Echelon presented sufficient evidence to create a question of fact regarding whether Carter acted recklessly with regard to its employees' signing of lien waivers. The court erred in dismissing Echelon's claim of fraud. This part of the trial court's order must be reversed and the matter must be remanded for further proceedings.

6. Michigan does provide a cause of action for aiding and abetting the breach of a fiduciary duty. Echelon offered sufficient evidence to present a question of fact regarding whether Carter aided and abetted Wood's breach of her fiduciary duties to Echelon. Carter was not entitled to summary disposition with regard to this claim. This part of the trial court's order must be reversed and the matter must be remanded for further proceedings.

7. Echelon failed to state a claim with regard to the allegation that Carter converted Echelon's property. The checks were the property of Carter and therefore could not be converted by Carter. This part of the trial court's order must be affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. Accounts and Accounting — Accounts Stated.

The conversion of an open account into an account stated is an operation by which the parties assent to the sum as the correct balance due from one to the other; the existence of an account stated is a question of fact.

2. Agency — Apparent Authority.

> Apparent authority may arise when acts and appearances lead a third party reasonably to believe that an agency relationship exists; apparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent.

3. Words and Phrases — Ratifications.

> Ratification is the affirmance by a person of a prior act that did not bind the person but was done or professedly done on the person's account, whereby the act, with regard to some or all persons, is given effect as if originally authorized by the person; unauthorized acts of an agent are ratified if the principal accepts the benefits of the unauthorized acts with knowledge of the material facts.

4. Words and Phrases — Affirmances.

> An affirmance is either a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized or conduct by him justifiable only if there were such an election.

5. Accounts and Accounting — Accounts Stated.

> The creation of an account stated requires the assent of both parties to the account.

6. Conversion — Common Law — Aiding and Abetting.

> The common-law tort of conversion consists of any distinct act of dominion wrongfully exerted over another person's personal property; a person may be guilty of conversion by actively aiding or abetting another in such an act.

7. Conversion — Money.

> A defendant must have an obligation to return the specific money entrusted to his care in order for an action for conversion of such money to be brought against the defendant.

8. Agency — Breach of Fiduciary Duties — Aiding and Abetting.

> A cause of action for aiding and abetting the breach of a fiduciary duty is recognized in Michigan.

*Wasinger Kickham and Hanley* (by *Stephen Wasinger* and *Timothy O. McMahon*) for Echelon Homes, L.L.C.

*Russell & Stoychoff, P.C.* (by *Paul M. Stoychoff*), for Carter Lumber Company.

Before: HOEKSTRA, P.J., and SAWYER and GAGE, JJ.

PER CURIAM. In Docket No. 243180, plaintiff-counterdefendant-appellant Echelon Homes, L.L.C. (Echelon), appeals as of right from an order granting defendant-counterplaintiff-appellee Carter Lumber Company's (Carter) motion for summary disposition regarding Echelon's complaint. In Docket No. 243112, defendant-counterplaintiff-appellant Carter appeals as of right from an order denying its motion for summary disposition and granting Echelon's motion for summary disposition regarding Carter's counterclaim. The appeals were consolidated. We affirm in part, reverse in part, and remand for further proceedings.

### I. FACTUAL HISTORY

Echelon, a limited liability company with two members, James T. Hysen and Carroll Strange, builds and develops residential housing. Carter, a corporation headquartered in Kent, Ohio, operates a chain of retail stores selling building supplies.

The events giving rise to the instant case center on the acts of a former Echelon employee, Carmella Wood. Echelon hired Wood as a secretary, administrative assistant, and bookkeeper in 1997. In July of 2000, Strange and Hysen discovered that Wood had engaged in a scheme with several members of her family to embezzle from Echelon. The scheme included fraudulently obtaining credit accounts with several vendors, including Carter, and then using those accounts for their own personal use, including purchasing building supplies for Wood's residence. Echelon reported Wood's

actions to the Michigan State Police and terminated her employment. Wood pleaded guilty to one count of embezzlement of more than $20,000 and four counts of uttering and publishing a forged instrument.

On February 7, 2001, Echelon commenced an action against Carter. Its complaint alleged that Carter (1) aided and abetted Wood in the conversion of Echelon's assets by knowingly or recklessly allowing Wood to charge tens of thousands of dollars to unauthorized accounts; (2) aided and abetted Wood's breach of her fiduciary duties to Echelon; (3) converted Echelon's assets and property to its own use; and (4) committed fraud by sending Echelon invoices for goods and services that were not provided to it. In response, Carter filed a counterclaim alleging that between March 1999 and January 2000, it sold goods to Echelon on credit. Carter alleged the existence of an account stated between the parties and that Echelon owes Carter $26,987.82.

At a hearing held on March 27, 2002, the circuit court found that Echelon had not provided any information to show that Carter had acted intentionally, and granted Carter's motion for summary disposition with regard to Echelon's complaint. In a second hearing held on July 10, 2002, the court denied Carter's motion for summary disposition on its counterclaim and granted summary disposition in favor of Echelon.

## II. STANDARD OF REVIEW

We review de novo decisions to grant or deny summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). Under MCR 2.116(C)(10), summary disposition is appropriate when there is "no genuine issue as to any material fact . . . ." A question of material fact exists "when the record,

giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The issue must be material to the parties' dispositive legal claims. *Auto Club Ins Ass'n v State Automobile Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003), citing *State Farm Fire & Cas Co v Johnson*, 187 Mich App 264, 267; 466 NW2d 287 (1990). In deciding a motion under this rule, the trial court must consider "the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party . . . ." *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

### III. ANALYSIS

#### DOCKET NO. 243112

Carter first asserts that, in denying its motion for summary disposition, the court ignored unrebutted evidence that Wood was Echelon's agent with the apparent authority to open a credit account and that Echelon is therefore bound by her actions and is liable for the balance due on the account.

Carter's claim is premised on the existence of an account stated between itself and Echelon. An account stated consists of a " 'balance struck between the parties on a settlement . . . .' " *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 331; 657 NW2d 759 (2002), quoting *Watkins v Ford*, 69 Mich 357, 361; 37 NW 300 (1888). " '[W]here a plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance.' " *Id*. In *Kaunitz v Wheeler*, 344 Mich 181, 185; 73 NW2d 263 (1955),

quoting from *White v Campbell,* 25 Mich 463, 468 (1872), the Michigan Supreme Court explained as follows:

> "The conversion of an open account into an account stated, is an operation by which the parties *assent* to the sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account." [Emphasis in original.]

In the instant case, the trial court found that there was no question of material fact regarding the existence of an account stated. Carter failed to present any evidence of an agreement between itself and Echelon. But Carter argues that an account stated arose because of its agreement with Wood. It further asserts that, because Wood acted with apparent authority, her dealings with Carter bind Echelon and satisfy the requirement that the parties assent to an account stated.

The actions of an agent bind a principal where the agent acts with either actual or apparent authority. *Meretta v Peach,* 195 Mich App 695, 698; 491 NW2d 278 (1992). This Court has stated that "[a]pparent authority may arise when acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Id.* at 698-699. But "[a]pparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent." *Id.* at 699, citing *Smith v Saginaw S & L Ass'n,* 94 Mich App 263, 271; 288 NW2d 613 (1979).

The evidence shows that Carter relied solely on Wood's acts and conduct in forming the belief that Wood

had the authority to open an account. Wood opened the account with Carter by forging the signature of one of Echelon's owners, James Hysen. The manager of the store at which Wood opened the account admitted that he had never done business with or even heard of Echelon before receiving the credit application prepared by Wood. He did not attempt to investigate further or determine what type of business Echelon conducted. Furthermore, in arguing that Echelon failed to properly supervise Wood, Carter admits that Echelon was unaware of the credit account until the summer of 2000. The evidence shows that the only contact between Echelon and Carter took place through Wood. Any acts or appearances that might reasonably have led Carter to believe that Wood had authority to open the account cannot be traced to Echelon as required by *Meretta*.

Even when viewed in the light most favorable to Carter, the evidence shows that Echelon did not grant Wood the authority to open a credit account. Because Wood did not have the authority to act on Echelon's behalf in this matter, no binding agreement exists between Echelon and Carter. Under *Kaunitz*, there can be no account stated because Echelon never assented to the creation of the account. Therefore, Echelon is not liable for the outstanding balance and the trial court did not err in denying Carter's motion for summary disposition.

Carter next asserts that, even if Wood did not act with apparent authority, the agreements she entered into with Carter are binding because they were ratified by Echelon. The Supreme Court in *David v Serges*, 373 Mich 442, 443-444; 129 NW2d 882 (1964), stated that "[w]hen an agent purporting to act for his principal exceeds his actual or apparent authority, the act of the agent still may bind the principal if he ratifies it." The

Court, *id.* at 444, then adopted the following definitions from the Restatement Agency, 2d, §§ 82 and 83:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

"Affirmance is either

"(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

"(b) conduct by him justifiable only if there were such an election."

Further, this Court has stated that "[u]nauthorized acts of an agent are ratified if a principal accepts the benefits of the unauthorized acts with knowledge of the material facts." *Bruno v Zwirkoski,* 124 Mich App 664, 668; 335 NW2d 120 (1983), citing *David Stott Flour Mills v Saginaw Co Farm Bureau,* 237 Mich 657, 663; 213 NW 147 (1927), and *Langel v Boscaglia,* 330 Mich 655, 659-660; 48 NW2d 119 (1951).

The facts of *David Stott Flour Mills, supra* at 659, provide an example. In that case, the plaintiff brought suit over a series of contracts to sell flour to the defendant. In its defense, the defendant claimed that its manager, who signed the contracts, had exceeded his authority. *Id.* at 660. The plaintiff countered by asserting that the defendant had ratified the contracts by accepting partial deliveries and making payments on them. *Id.* at 662-663. The Court found that the defendant failed to present evidence that any of the defendant's officers "knew that such payments were made to the plaintiff, or in any way consented to the use of the money of the corporation for such purpose." *Id.* at 663. The Court, *id.* at 663-664, quoted 21 R C L, p 929 for the following proposition:

"[R]atification of an antecedent act of an agent which was unauthorized cannot be held valid and binding where the person sought to be charged had misapprehended; or mistaken material facts, although he may have wholly omitted to make inquiries of other persons concerning them, and his ignorance and misapprehension might have been enlightened and corrected by the use of diligence on his part to ascertain them."

On that basis, the Court held that "there was no sufficient proof to justify the submission of this question to the jury." *David Stott Flour Mills, supra* at 664.

In the instant case, Carter asserts that Echelon ratified Wood's action of opening the credit account with Carter when it admitted that it owed Carter an outstanding balance of $26,987.82. It first argues that one of Echelon's owners, Jim Hysen, admitted that Echelon owed this amount. However, what Hysen actually said was that according to Carter's paperwork, this amount was outstanding. This does not constitute an affirmance under the definition adopted by the Michigan Supreme Court in *Serges, supra* at 443-444. Rather than electing to treat Wood's acts as authorized, Hysen merely acknowledged the amount of Carter's claim.

Carter next contends that Echelon admitted its liability through the testimony of Danielle Domanik, an Echelon employee. At Wood's restitution hearing, Domanik testified that "Echelon, Echelon's owners, and some other people lost money due to Wood's conduct." Among the evidence she presented at the hearing were invoices and an account statement from Carter showing an outstanding balance of $26,232.70. As with Hysen's testimony, this does not constitute an election by Echelon to authorize or accept benefits from Wood's actions.

Finally, Carter argues that Echelon ratified Wood's actions by accepting some of the materials that Wood

obtained from Carter. A portion of the materials that Wood obtained was recovered by the Michigan State Police. These materials were then given to Echelon. Hysen admitted that Echelon then traded these items to some of its creditors in order to reduce the company's debt.

Although Echelon admits that it accepted and made use of the materials recovered by the state police, Carter has not shown the existence of a genuine issue of material fact concerning ratification. Echelon was the victim of theft, and it accepted some items, purchased with its own stolen funds, from the state police. Carter has only shown that Wood obtained a portion of these recovered materials from one of its stores. It has failed to provide any evidence that this constituted an affirmance in that Echelon's actions could only be justified if Echelon were electing to authorize Wood's actions. *Serges, supra* at 444. Further, Carter has not presented evidence showing that Echelon knew that the acceptance of this material would constitute such a ratification. Like the plaintiff in *David Stott Flour Mills, supra* at 663, Carter has failed to show that Echelon had sufficient "knowledge of the material facts" for its actions to constitute an assent to Wood's conduct. Thus, as in *David Stott Flour Mills*, the evidence presented is insufficient to create a genuine issue of material fact for a jury. We find that the trial court did not err in denying Carter's motion for summary disposition and granting Echelon's motion for summary disposition with regard to this issue.

In its final claim, Carter asserts that the trial court erred in granting Echelon's motion for summary disposition because a genuine issue of material fact existed with regard to the scope of Wood's agency relationship with Echelon. Carter correctly asserts that questions

"relating to the existence and scope of an agency relationship" are questions of fact. *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995), citing *Norcross Co v Turner-Fisher Assoc*, 165 Mich App 170, 181; 418 NW2d 418 (1987). But, contrary to Carter's claim, such a question cannot be created by filing an affidavit of account stated under MCL 600.2145.

The creation of an account stated requires the assent of both parties to the account. *Kaunitz, supra* at 185. If an account stated exists, an unanswered affidavit under MCL 600.2145 creates a prima facie case that the party failing to respond owes the other party the amount stated.

Carter previously argued that Wood acted with apparent authority when she opened an account in Echelon's name. Therefore, concludes Carter, Echelon assented to the creation of the account and is liable to Carter for the outstanding balance under MCL 600.2145. But, as noted above, Carter presented no evidence that Wood had actual or apparent authority from Echelon to open this account, and no account stated exists.

Carter now argues that the trial court erred in granting Echelon's motion for summary disposition because Carter created a genuine issue of material fact regarding the scope of Wood's agency by filing an affidavit of account stated. We find Carter's logic on this point unsound. An assertion that an account stated exists cannot create a question of fact regarding the existence of the apparent authority needed to create it. In the instant case, a finding that Wood acted with apparent authority is a prerequisite to a finding that an account stated was created. Therefore, Carter's affidavit does not create a genuine issue of material fact

concerning the scope of the agency relationship between Wood and Echelon and the trial court did not err in granting Echelon's motion for summary disposition.

DOCKET NO. 243180

Echelon first claims that the trial court erred in granting Carter's motion for summary disposition because a genuine issue of material fact existed concerning its claim that Carter aided and abetted Wood's conversion of Echelon's property. This issue actually consists of two distinct claims. First, Echelon asserts that Carter assisted Wood in the commission of common-law conversion. Second, Echelon argues that Carter is liable to Echelon for statutory conversion pursuant to MCL 600.2919a.

The common-law tort of conversion consists of "any distinct act of dominion wrongfully exerted over another person's personal property." *Pamar Enterprises, Inc v Huntington Banks of Michigan*, 228 Mich App 727, 734; 580 NW2d 11 (1998), citing *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982). In *Trail Clinic, PC, supra* at 706, citing 18 Am Jur 2d, Conversions, § 120, p 231, this Court set forth the elements of a claim of aiding and abetting conversion:

> [A] person may be guilty of a conversion by actively aiding or abetting or conniving with another in such an act. Indeed, one may be liable for assisting another in a conversion though acting innocently. These rules are especially applicable where the defendant received benefit from the conversion and subsequently approved and adopted it.

In the instant case, Echelon cannot sustain a common-law claim of aiding and abetting conversion against Carter. Unlike the situation in *Trail Clinic, PC*, here there is no underlying conversion. The property allegedly converted by Wood must consist of either the

checks that were issued by American Title Company on Echelon's behalf or the underlying funds in Echelon's escrow account with American Title.

In *Trail Clinic, PC, supra* at 707, the defendant assisted in the conversion of checks made payable to Dr. Lal Gopal Banerji and assigned by contract to Trail Clinic. The principal, Westminster Medical Management Corporation, was liable for conversion because a check is "considered to be the property of the designated payee . . . ." *Id.* at 705. But in the instant case, American Title made the checks payable to Carter. Thus, they constitute Carter's personal property. Because the checks do not belong to Echelon, their conversion does not amount to the invasion of one of Echelon's legally protected interests. Therefore, Echelon does not have standing to file a conversion claim against Wood. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 740; 629 NW2d 900 (2001), citing *Lujan v Defenders of Wildlife*, 504 US 555, 560; 112 S Ct 2130; 119 L Ed 2d 351 (1992). Consequently, Echelon cannot bring suit against Carter for aiding and abetting conversion of the checks.

A similar result occurs if Echelon asserts that Wood converted the funds in Echelon's account with American Title. "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999), citing *Check Reporting Services, Inc v Michigan Nat'l Bank-Lansing*, 191 Mich App 614, 626; 478 NW2d 893 (1991). In *Garras v Bekiares*, 315 Mich 141, 147; 23 NW2d 239 (1946), the plaintiff brought an action alleging conversion based on a dispute over a consignment agreement. The Michigan Supreme Court held that because the "plaintiff was not

entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion."

In the instant case, Wood admits embezzling funds from Echelon and may be liable for restitution. But she is not obligated to return the "specific or identical moneys" taken from Echelon's account with American Title. *Garras, supra* at 147. Consequently, Echelon cannot maintain a cause of action for conversion of these funds. Because the underlying claim fails, Echelon cannot assert a cause of action for aiding and abetting against Carter.

Regardless of whether Carter actively participated in Wood's scheme, Echelon fails to state a claim on which relief can be granted. The trial court granted Carter's motion for summary disposition on the ground that Echelon had not presented any evidence that Carter acted intentionally. That it granted Carter's motion under MCR 2.116(C)(10) rather than MCR 2.116(C)(8) makes no difference. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2001). Ordinarily, we affirm the decisions of a trial court "if it reached the right result, even for the wrong reasons." *Id.* Therefore, we affirm the trial court's order granting Carter's motion for summary disposition regarding Echelon's common-law conversion claim.

In addition to the common-law claim, Michigan provides a statutory cause of action against those who aid in the conversion of property. Statutory conversion under MCL 600.2919a " 'consists of knowingly "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." ' " *Campbell v Sullins*, 257 Mich App 179, 191; 667 NW2d 887 (2003), quoting *Head, supra* at 111. The statute provides a remedy against the accomplice only and not against the

person who actually stole, embezzled, or converted the property. *Campbell, supra* at 191-192, citing *Marshall Lasser, PC v George,* 252 Mich App 104, 112; 651 NW2d 158 (2002).

In the instant case, Wood pleaded guilty to a charge of embezzling funds from Echelon, and Carter received payment from American Title as a result of this embezzlement. The only question concerns whether Carter acted with knowledge of Wood's scheme when Carter accepted these payments. In *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197, 214; 476 NW2d 392 (1991), quoting *Gordon Sel-Way, Inc v Spence Bros, Inc,* 177 Mich App 116, 124; 440 NW2d 907 (1989), rev'd in part on other grounds 438 Mich 488; 475 NW2d 704 (1991), the Supreme Court stated that " 'the combined knowledge of employees may be imputed to a corporation.' "

In the instant case, Echelon has produced little evidence from which it can be inferred that Carter or any of Carter's employees had actual knowledge of Wood's scheme to embezzle funds from Echelon. Wood initially obtained the account with Carter by forging the name of one of Echelon's owners on the application form. The manager of the store where Wood obtained the account testified that he did not realize that Wood lacked the authority to open the account until after Echelon discovered her scheme and contacted Carter. Wood herself testified that neither the manager of the store nor anyone else at Carter had any knowledge of what she was doing.

Echelon argues that a question of material fact exists concerning Carter's actual knowledge. It further asserts that the trial court should not have relied on Wood's testimony to defeat its claims because she is a

convicted felon. At most, Echelon contends, this testimony should be a matter for a jury's consideration.

Echelon's argument misstates the standard for deciding motions brought pursuant to MCR 2.116(C)(10). Courts may not make findings of fact or weigh credibility in deciding a summary disposition motion. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994), citing *Zamler v Smith,* 375 Mich 675, 678-679; 135 NW2d 349 (1965). Rather, they must view the evidence presented in the light most favorable to the nonmoving party. *Ritchie-Gamester, supra* at 76. Courts may only consider the "substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

Regardless, Echelon further argues that, even if Carter had no actual knowledge, sufficient circumstantial evidence exists to create a question of fact regarding whether Carter had constructive knowledge. With this, we agree.

Echelon claims that Wood's actions placed Carter's employees on "inquiry notice" and required them to investigate the extent of her authority. Echelon contends that a jury could find that, because of Carter's employees' willful blindness, Carter had knowledge of Wood's embezzlement. In support of this argument Echelon quotes the following language from *Deputy Comm'r of Agriculture v O & A Electric Co-op, Inc*, 332 Mich 713, 716-717; 52 NW2d 565 (1952):

> A person is chargeable with constructive notice when, having the means of knowledge, he does not use them. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries and does not make, but studiously avoids making, the obvious inquiries, he must be taken to have notice of those facts which, had he used ordinary diligence, would have been readily ascertained.

Additionally, Echelon draws an analogy between the facts of the instant case and those in *In re Thomas Estate*, 211 Mich App 594; 536 NW2d 579 (1995). In *Thomas Estate*, the respondent bank released funds to the former guardian of an estate despite the fact that her authority had already been terminated. *Id.* at 596-597. The bank claimed that it had no actual knowledge of any restrictions on her authority. *Id.* at 601. But it had in its possession the actual letter of authority that stated that the guardian's authority shall terminate on a certain date. *Id.* This Court held that the bank would have discovered that her authority had expired if it had "conducted a reasonably diligent inquiry." *Id.*

The most relevant point from *Thomas Estate* is that this Court required the bank to act with reasonable diligence. On the basis of this standard, the inference could be drawn that Carter had constructive knowledge that the funds used to pay it were embezzled as required by MCL 600.2919a. Some of the factors cited by Echelon include that Wood opened an unauthorized account, listed the billing address on the account as a post office box, had Carter deliver building materials directly to her personal home, and convinced Carter's employees to sign lien waivers for addresses to which Carter never delivered goods.

This is not a case in which a person goes into a store, opens an account, and buys a few supplies on credit. In this case, Wood went into Carter's store, opened a company account, and bought thousands of dollars in supplies. Carter's store manager admitted that he had never heard of plaintiff company, yet he was willing to accept Wood's credit application without question. While companies often receive mail at post office boxes for legitimate purposes, in this case, Echelon is a company in Brighton and the address Wood used was a

post office box in Highland. Carter's employees allowed plaintiff to very quickly become one of its largest credit customers and never once investigated the situation. Carter's manager testified that it was his standard practice to sign lien waivers for customers without checking the address of the job site. While there may be no reason for Carter to verify the delivery address each time a customer wished to make a payment for materials delivered, in this case, the customer was a new, very high credit customer with whom Carter was unfamiliar. Carter's employees also allowed other individuals to buy merchandise on Echelon's credit without questioning the individuals and allowed unknown persons to pick up purchased supplies without question. All this evidence, taken into account with the fact that Echelon very quickly became one of Carter's largest customers, may have been sufficient to put Carter on notice that it should inquire into the matter.

Under the circumstances, plaintiff presented sufficient evidence to create a question of fact concerning whether an honest person, using ordinary caution, would have made further inquiries into the matter. We find that a rational jury could conclude that the information possessed by Carter through its employees amounted to knowledge that Wood was paying it with embezzled funds. Because a question of material fact existed regarding Carter's knowledge, the trial court erred in dismissing Echelon's statutory conversion claim pursuant to MCR 2.116(C)(10).[1]

---

[1] The trial court improperly analyzed only the issue of intent with regard to Carter's conduct. Because we find there is sufficient evidence to defeat a motion for summary disposition with regard to Carter's knowledge, we make no determination with regard to the trial court's finding that there was no evidence of Carter's intent.

In its next argument, Echelon asserts that the trial court erred in dismissing its fraud claim. In *Kassab v Michigan Basic Prop Ins Ass'n*, 441 Mich 433, 442; 491 NW2d 545 (1992), quoting *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), the Michigan Supreme Court stated that the following elements constitute actionable fraud or misrepresentation:

> "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

In the instant case, Carter made a representation when it signed lien waivers asserting that it had delivered building materials to certain locations. The representation was false in that Carter did not deliver supplies to the stated addresses. Carter made the representation with the intent that Echelon's title company would rely on it, because Carter's store manager admitted that he signed lien waivers so that Carter could receive payment on Echelon's account. Echelon relied on this representation in that its title company issued checks to Carter on the basis of the lien waivers. Thus, the only remaining question is whether Carter made the representation knowing that it was false or made it recklessly, without any knowledge of its truth.

Reckless misconduct is not willful in the sense that there is actual intent to cause harm. *Jennings v Southwood*, 446 Mich 125, 140; 521 NW2d 230 (1994). Rather, it constitutes the functional equivalent of willfulness in that it shows an " 'indifference to whether harm will result as to be the equivalent of a willingness that it

does.' " *Id.*, quoting *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982).

In the instant case, Wood led Carter to believe that she was authorized to act on Echelon's behalf by forging the name of one of Echelon's owners on a credit application. Carter, without any question, delivered materials to several locations at Wood's request. Because of the transactions engineered by Wood, in a very short time, Echelon became one of the largest customers at Carter's White Lake store. The store manager knew that Echelon paid its account through checks drawn from American Title. The testimony presented by Echelon shows that Carter's employee signed a lien waiver presented by a major customer without confirming if or when Carter had shipped materials to the address listed on the document. The evidence may support an inference that Carter's employees acted with indifference regarding whether signing the lien waivers would harm Echelon. Thus, there was sufficient evidence produced to create a question of fact about whether Carter acted recklessly in regard to the lien waivers. Therefore, the trial court erred in dismissing Echelon's fraud claim.

Echelon also asserts that the trial court erred in dismissing its claim that Carter aided and abetted Wood's breach of her fiduciary duties to Echelon. Fiduciaries owe a duty of good faith to their principals. *Central Cartage Co v Fewless,* 232 Mich App 517, 524; 591 NW2d 422 (1998), citing *Production Finishing Corp v Shields,* 158 Mich App 479, 486-487; 405 NW2d 171 (1987). Fiduciaries may not act for themselves at their principals' expense during the course of their agency. *Id.* An agent must account to his employer for any profit the agent acquires " 'for himself from third parties by

means of his fiduciary character . . . .' " *Central Cart-age, supra* at 525, quoting *Production Finishing, supra* at 487.

Contrary to assertions by Carter, Michigan law does provide for a cause of action for aiding and abetting the breach of a fiduciary duty. Our Supreme Court has stated that a person who " ' "knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise." ' " *Hayes-Albion Corp v Kuberski*, 421 Mich 170, 187; 364 NW2d 609 (1984), quoting *L A Young Spring & Wire Co v Fall,* 307 Mich 69, 106-107; 11 NW2d 329 (1943), quoting *Irving Trust Co v Deutsch,* 73 F2d 121 (CA 2, 1934).

> "Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary. If the third person makes a profit through such participation, he is chargeable as constructive trustee of the profit so made." [*In re Goldman Estate*, 236 Mich App 517, 521; 601 NW2d 126 (1999), quoting 3 Scott on Trusts, p 2429, § 506, which was also quoted with approval in *L A Young Spring & Wire Corp, supra* at 106.]

In *Hayes-Albion, supra* at 186, the defendant, Michael A. Kuberski, worked for the plaintiff as its chief engineer. He and several tool suppliers secretly planned to form a company to compete with the plaintiff. *Id.* Despite being asked to find alternative sources of supply, Kuberski diverted more of plaintiff's business to the suppliers. *Id.* The Court held that Kuberski violated his fiduciary duty to the plaintiff and that the suppliers knowingly participated in this violation. *Id.* at 187. Because the suppliers were unjustly enriched by this participation, the Court found them liable to the plaintiff. *Id.*

A situation similar to that in *Hayes-Albion* exists in the instant case. Like Kuberski, Wood violated her fiduciary duties to her employer. Just as the suppliers in *Hayes-Albion* obtained additional orders because of Kuberski's breach, Wood's fraudulent scheme resulted in more business for Carter. If Carter knowingly participated in Wood's scheme, it too was unjustly enriched and should be held liable to Echelon.

As previously noted, Echelon has presented sufficient evidence from which a jury could find Carter had knowledge of Wood's scheme. There was evidence that Carter's employees were involved and substantially assisted Wood's scheme from the beginning and that this occurred because of the negligence or other acts of Carter, such as its failure to verify whether only authorized users were using the account opened in Echelon's name and whether supplies purchased on that account were delivered to actual addresses. Carter allowed Wood to open the account and signed lien waivers. Thus, there is evidence that Carter took affirmative steps to aid Wood in her scheme and received a profit because of it. Whether Carter aided and abetted Wood in her breach of fiduciary duties depend on factual determinations for a jury to decide. While Echelon may not ultimately prevail on these facts, viewing the evidence in the light most favorable to Echelon, Carter is not entitled to summary disposition pursuant to MCR 2.116(C)(10) on Echelon's claim alleging aiding and abetting breach of fiduciary duty.

Echelon next argues that a question of material fact existed regarding its claim that Carter converted its property. A person is liable for conversion if he wrongfully exerts dominion over the personal property of another, and, as stated above, checks are the property of the payee. *Pamar Enterprises, Inc, supra* at 734. In the

instant case, Echelon claims that Carter converted its property by obtaining checks from American Title. Echelon asserts that these checks were its property and that Carter acquired them by falsely representing that it was entitled to these payments. But Carter was the designated payee on the checks issued by American Title. Under *Pamar Enterprises, Inc,* these checks were the property of Carter, not Echelon. A person cannot convert his own property. *Foremost Ins Co v Allstate Ins Co,* 439 Mich 378, 391; 486 NW2d 600 (1992). Therefore, under MCR 2.116(C)(8), Echelon has failed to state a claim on which relief can be granted. Although the trial court granted Carter's motion pursuant to MCR 2.116(C)(10) rather than MCR 2.116(C)(8), it reached the right result and we affirm its decision. *Wickings, supra* at 150.

Finally, Echelon raises the issue whether Carter is permitted to submit evidence of Echelon's alleged negligence. However, the trial court did not directly analyze or rule on this issue. Therefore, we decline to review the issue.

### IV. CONCLUSION

In sum, in Docket No. 243112, we affirm the trial court's grant of summary disposition to Echelon. In Docket No. 233180, we reverse the trial court's dismissal of Echelon's claims against Carter of statutory conversion, fraud, and aiding and abetting breach of fiduciary duty, but affirm the dismissal of the remaining claims.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.